IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SCIERAN TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-1319 (SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| BAUSCH & LOMB INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

**BAUSCH & LOMB INCORPORATED'S THIRD NOTICE OF DEPOSITION OF
SCIERAN TECHNOLOGIES PURSUANT TO FED. R. CIV. P. 30(b)(6)**

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30(b)(6), defendant

Bausch & Lomb Incorporated ("B&L") will take the deposition by oral examination of Scieran

Technologies, Inc. ("Scieran") by one or more officers, directors, managing agents or other

persons who consent to testify on Scieran's behalf.  The deposition will commence on June 15,

2005 at 2:30 p.m. at the offices of Morris, Nichols, Arsht & Tunnell, 1201 North Market Street,

Wilmington, Delaware 19801, or at such other place and time as may be mutually agreed upon

by counsel, and will continue from day to day until completed.  The deposition will be taken

before a court reporter, notary public, or other person authorized by law to administer oaths, and

will be recorded stenographically and/or by videotape.

The topics on which examination is requested are set forth in the numbered

paragraphs below.  Scieran is requested to identify the person or persons who will be designated

to testify on its behalf as to each topic on or before June 8, 2005.

**DEFINITIONS AND INSTRUCTIONS**

1.     The "patents-in-suit" means U.S. Patent Nos. 6,629,986 B1 ("the '986

patent") and 6,258,111 B1 ("the '111 patent").

2.      The "Vit Commander" means the Vit Commander and all of its prototypes, including the Vitrx Commander.

## TOPICS

1.      All facts concerning Scieran's 510K application for FDA approval of the Vit Commander.

2.      Scieran's sales volume, pricing, revenues, costs, expenses, and profits or losses (gross and net) for any vitrectomy devices.

3.      Scieran's projected or forecasted sales volume, pricing, revenues, costs, expenses, and profits or losses (gross and net) for any vitrectomy devices.

4.      The United States market for vitrectomy devices since 1997, including but not limited to:  (a) the size of the market; (b) the identity of each competitor in the market; (c) the competitive products in the market; (d) the market share of each competitor and each competitive product; (e) Scieran's market share; (f) competition between Scieran and any other company; and (g) any market research, studies, analyses, business plans, or evaluations regarding the vitrectomy device market.

5.      Scieran's marketing, promotion and sale of any vitrectomy devices, including training materials, sales aides, marketing or economic studies, materials provided to or from marketing consultants, surveys, brochures, and advertisements, as well as materials provided to sales representatives and customers.

6.      Additional sales, marketing, advertising or promotional activities, and the costs associated with those activities, that would have been required to capture any sales of vitrectomy devices from Bausch & Lomb, and Scieran's ability to engage in such activities and incur such costs.

- 2 -

7.      Scieran's manufacturing capacity for vitrectomy devices during the period for which Scieran seeks damages in this action.

8.      The manufacturing capacity that would have been required to capture any sales allegedly lost to Bausch & Lomb, the costs involved in meeting that capacity, and Scieran's ability to increase its capacity and incur such costs.

9.      Scieran's ability to meet demand for vitrectomy devices during the period for which Scieran seeks damages in this action.

10.     Scieran's discontinuation of its sales of vitrectomy devices, and the reasons for that discontinuation.

11.     Scieran's attempts to sell, transfer or license the patents-in-suit, and any negotiations therefor.

12.     Scieran's contracts, agreements or other arrangements with Allergan concerning vitrectomy devices, including when those contracts, agreements or other arrangements were terminated and the reasons therefore.

13.     Scieran's contracts, agreements or other arrangements with any company other than Allergan to purchase or sell vitrectomy devices.

14.     All documents relating to the subject matter of paragraphs 1-13.

15.     All persons with knowledge of the subject matter of paragraphs 1-14.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Leslie A. Polizoti
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
   *Attorneys for Defendant Bausch & Lomb*
   *Incorporated*

May 16, 2005

464235

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 16, 2005, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to the following: Josy W. Ingersoll and Leslie A. Polizoti.

I also certify that on May 16, 2005, I caused to be served true and correct copies of the foregoing document on the following in the manner indicated below:

### <u>BY HAND</u>

Josy W. Ingersoll
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

### <u>BY FEDERAL EXPRESS</u>

Edward O'Connor
Becky V. Christensen
O'CONNOR CHRISTENSEN & MCLAUGHLIN LLP
1920 Main Street, Suite 150
Irvine, CA  92614

/s/ Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT AND TUNNELL
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com