IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SCIERAN TECHNOLOGIES, INC.,        )
                                   )
            Plaintiff,             )        C.A. No. 04-1319 (SLR)
                                   )
      v.                           )
                                   )        JURY TRIAL DEMANDED
BAUSCH & LOMB INCORPORATED,        )
                                   )
            Defendant.             )

**BAUSCH & LOMB'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER**

        Pursuant to Fed. R. Civ. P. 15(a), defendant Bausch & Lomb Incorporated ("B&L") moves for leave to amend its Answer to assert the affirmative defenses of laches, unclean hands and inequitable conduct and to counterclaim for a declaratory judgment of invalidity and unenforceability.  Pursuant to D. Del. LR 15.1, attached as Exhibit 1 are two copies of B&L's proposed Amended Answer, and attached as Exhibit 2 is a copy indicating the respects in which the Amended Answer differs from the original Answer.  The bases for this motion are as follows:

        1.    Scieran Technologies, Inc. ("Scieran") filed this action on September 30, 2004, alleging that Bausch & Lomb Surgical, Inc. infringed U.S. Patent No. 6,258,111 ("the '111 patent") and U.S. Patent No. 6,629,986 ("the '986 patent") (D.I. 1).

        2.    On November 22, 2004, B&L answered the Complaint and asserted that the '111 and '986 patents were invalid and not infringed (D.I. 7).

        3.    On February 11, 2005, pursuant to stipulation (D.I. 14), Scieran amended its Complaint to substitute Bausch & Lomb Incorporated as the defendant (D.I. 15).  B&L answered the First Amended Complaint on February 28, 2005 (D.I. 20).

4.    The asserted claims of the '111 and '986 patents cover a surgical device having an inner cutter and an outer cutter, where the inner cutter has a slit and a pre-bent tip that exerts a spring force on the outer cutter.  The applications for the '111 and '986 patents were filed on October 3, 1997.  The '111 patent issued on July 10, 2001.  The '986 patent issued on October 7, 2003, as a continuation of the '111 patent.

5.    A company called Noetix had brought to two of the named inventors, Messrs. Ross and Boore, a device (for use in a surgical procedure in the eye called a vitrectomy) meeting the limitations of the claims in 1994 – years before their patent application.  The inventors formed plaintiff Scieran, used the Noetix device in surgery and promoted it at trade shows and conferences in 1995.  The inventors, however, did not disclose any of that information to the United States Patent and Trademark Office ("PTO").

6.    Noetix's device was based on a product for spinal surgery called the Diskecter, which was marketed by Sofamor Danek starting in 1994.  Noetix told Messrs. Ross and Boore about the Diskecter.  They formed plaintiff Scieran, and prepared business plans that acknowledged that the Diskecter used the same cutting technology as the Noetix device.[1]  The inventors, however, did not disclose any of that information to the PTO.[2]

7.    The Noetix device – which the inventors called the "Vit Commander" – was used in surgery and promoted at trade shows and conferences in 1995.  In June 1995,

---

[1]    In fact, B&L discovered the content of these business plans only because they were kept and produced by Promex (Noetix's successor) or by Mr. Boore – Scieran did not produce them.

[2]    The inventors did submit to the PTO one page from a Diskecter brochure, without telling the PTO about the relationship between the Diskecter and their work.  Moreover, they submitted that one page with an August 1997 fax line, but without the page showing a 1994 copyright date.

Scieran created and publicly distributed a videotape of a physician using the Noetix Vit Commander in surgery. The inventors did not disclose this videotape to the PTO. Also in 1995, Scieran created and distributed a newsletter called the Vit Commander Report. The inventors did not disclose this newsletter to the PTO. Doctors used the Noetix Vit Commander in surgery in 1995. The inventors did not disclose this to the PTO. Nor did they disclose to the PTO that a physician had presented the Vit Commander at the September 1995 Retina Society Meeting in Santa Fe, New Mexico, or that other physicians had promoted the Noetix Vit Commander System at the 1995 A.A.O. meeting in Atlanta, GA. Additionally, the inventors failed to disclose to the PTO information posted on Scieran's website during the prosecution of the application for the '111 and '986 patents, including that a physician had used the Noetix Vit Commander in surgery.

8.    After negotiations between Noetix and Scieran fell apart in mid-1995, Messrs. Ross and Boore hired an engineer, Mr. Greggory Hughes (also a named inventor). The three of them claim that they came up with a surgical device on their own that had the same cutter structure as the Noetix device (and the Diskecter). Messrs. Ross, Boore and Hughes then sought to patent that structure, but did not tell the PTO anything about their dealings with Noetix, the Noetix prototype, or their use of it.

9.    When the inventors then applied for patent protection on the technology Noetix brought them, that they had publicized in 1995, and that Sofamor Danek had sold as the Diskecter since 1994, they also submitted a false declaration swearing that they were the original and sole inventors of the subject matter of the applications.

10.    In addition, Mr. Hughes testified at his deposition that he knew he had to pre-bend the tip of the inner cutter so that it would come into contact with the outer cutter,

because of his experience with vitrectomy cutters – including his experience at a previous employer which sold a surgical device with a pre-bent inner cutter. Another inventor, Mr. Ross, had in his files a July 1993 document called "The Metamorphosis of Vitrectomy Cutters," which disclosed the cutter structure of a prior art vitrectomy device called the Ocutome. (In fact, Mr. Ross was a sales manager for Ocutome earlier in his career.) The Ocutome was described as having a bent inner cutter which creates a spring force. The inventors did not disclose that information to the PTO either.

11. During prosecution of the application for the '111 patent, the inventors overcame a rejection by distinguishing the prior art Storz MicroVit device on the basis that it did not disclose "a tip which exerts a spring force on an outer sleeve." They did not, however, tell the Examiner about their earlier testing of the MicroVit, which reported that its flared inner cutter exerted a spring force on the outer cutter. Nor did they disclose other prior art of which they were aware where the tip of the inner cutter exerted a spring force on the outer cutter, including that set forth in paragraph 10.

12. Thus, the basis for B&L's inequitable conduct defense and counterclaim is that the named inventors intentionally withheld from the PTO information material to the patentability of the claims of the applications that matured into the '111 and '986 patents, and misrepresented information to the PTO, with an intent to deceive. For example, they intentionally withheld from the PTO the facts that: (1) Noetix brought the invention to them; (2) Scieran used and publicly displayed the Noetix prototypes in 1995, long before the critical date; (3) their "invention" was based on the cutting technology of the Diskecter; (4) at least one of the inventors knew about pre-bent inner cutters exerting a spring force on the outer cutter from his previous work experience; (5) Mr. Ross had in his files a July 1993 document that contained

information highly material to the patentability of the claimed inventions; and (6) Scieran had test results that contradicted statements made to the PTO to distinguish a prior art vitrectomy device. In addition, the inventors misrepresented to the PTO that they had invented the cutting technology claimed in their applications, when in fact it had been brought to them by Noetix.

13.    The basis for the laches defense is that Scieran waited until September 2004 to sue B&L, although it was considering suing B&L in 2000, and could have sued in 2001 when the '111 patent issued. Moreover, Mr. Ross testified at his deposition that after Scieran knew it was likely to sue B&L, it destroyed 75% of its documents, including documents highly relevant to the validity of the patents. For example, Mr. Ross apparently destroyed Scieran documents showing its dealings with Noetix, its knowledge of the Diskecter and its early promotional efforts. The incomplete documentation B&L has obtained on those subjects came from third parties in response to subpoenas.

14.    The unclean hands defense is based on Scieran's destruction of highly relevant documents and on the allegations that form the basis of B&L's inequitable conduct defense and counterclaim.

15.    Finally, in addition to asserting invalidity as a defense, B&L also asserts a counterclaim for invalidity of the '111 and '986 patents.

16.    Fed. R. Civ. P. 15(a) provides that leave to amend "shall be freely given when justice so requires." In *Foman v. Davis*, 371 U.S. 178, 181-82 (1962), the Supreme Court stated that "this mandate is to be heeded":

> If the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.

The Supreme Court has stated that leave to amend should be granted absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Id.* at 182; *see also Howard v. Snyder*, C.A. No. 01-376 (SLR), 2003 WL 365912, at *1 (D. Del. Feb. 13, 2003) ("[T]he Federal Rules of Civil Procedure require leave to amend be freely granted.").

17.    None of the grounds for denying leave to amend is present here. B&L has no bad faith or dilatory motive, and the proposed amendment is not futile. Moreover, the proposed amendment will not result in undue prejudice to Scieran, which has control of the relevant facts, and this motion has not been unduly delayed.

18.    This motion is timely under the Court's Scheduling Order (D.I. 17), which permits amendments by September 2, 2005. The facts that form the basis for the inequitable conduct, unclean hands, and laches allegations were learned from Rule 30(b)(6) depositions of Scieran and the depositions of Messrs. Ross and Yorks (the attorney who prosecuted the patents-in-suit). On May 16, 2005, B&L noticed three Rule 30(b)(6) depositions of Scieran for June 14-15, 2005 (D.I. 47-49). By agreement of the parties, those depositions did not occur until July 28-29, 2005. When those depositions were taken, one of Scieran's designees was completely unprepared to testify on many subjects, including the prosecution of the patents-in-suit – a topic which plainly relates to issues of inequitable conduct. B&L had already noticed Mr. Ross' deposition for August 11-12 (D.I. 59) and Scieran designated Mr. Ross as its Rule 30(b)(6) witness on those subjects. B&L then took Mr. Yorks' deposition on August 22, 2005.

19.    After taking those depositions over the past month, B&L promptly sent its proposed amended pleading to Scieran's counsel on August 26, 2005. Scieran's counsel advised B&L today that it would not consent to the filing of the amended pleading.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Leslie A. Polizoti

Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
  *Attorneys for Bausch & Lomb Incorporated*

August 31, 2005

479033

## RULE 7.1.1 CERTIFICATE

I hereby certify, pursuant to D. Del. LR 7.1.1, that counsel for Bausch & Lomb Incorporated has made a reasonable effort to reach agreement with counsel for Scieran Technologies on the matters set forth in the foregoing motion, and the parties have not been able to reach agreement thereon.

/s/ Leslie A. Polizoti _____

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2005, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to Josy W. Ingersoll.

I also certify that on August 31, 2005, I caused to be served true and correct copies of the foregoing document on the following in the manner indicated below:

### BY HAND

Josy W. Ingersoll
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

### BY FEDERAL EXPRESS

Edward O'Connor
Craig McLaughlin
O'CONNOR CHRISTENSEN & MCLAUGHLIN LLP
1920 Main Street, Suite 150
Irvine, CA 92614


/s/ Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT AND TUNNELL
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com