# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SCIERAN TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-1319 (SLR) |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| BAUSCH & LOMB INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

## BAUSCH & LOMB'S FIRST AMENDED ANSWER TO SCIERAN'S FIRST AMENDED COMPLAINT

Bausch & Lomb Incorporated ("Bausch & Lomb") answers the first amended complaint of Scieran Technologies, Inc. as follows:

### THE PARTIES

1. ~~1.~~ Bausch & Lomb is without knowledge or information sufficient to form a belief as to the truth of this allegation.

2. ~~2.~~ Admitted.

### JURISDICTION AND VENUE

3. ~~3.~~ Admitted.

4. ~~4.~~ Denied.

5. ~~5.~~ Admitted.

### CLAIM FOR PATENT INFRINGEMENT

6. ~~6.~~ Bausch & Lomb re-alleges its responses to the allegations of paragraphs 1-5 above and incorporates them by reference.

7.   ~~7.~~——Admitted that the '986 patent, entitled "Apparatus and method for performing opthalmic procedures," states on its face that it issued on October 7, 2003, and that a copy is attached as Exhibit 1 to the Complaint. Otherwise denied.

8.   ~~8.~~——Denied, except that Bausch & Lomb is without knowledge or information sufficient to form a belief as to the truth of the allegations as to ownership, and admitted that General Patent Corporation International gave notice of the '986 patent to Bausch & Lomb in 2004.

9.   ~~9.~~——Admitted that the '111 patent, entitled "Apparatus and method for performing ophthalmic procedures," states on its face that it issued on July 10, 2001, and that a copy is attached as Exhibit 2 to the Complaint. Otherwise denied.

10.   ~~10.~~——Denied, except that Bausch & Lomb is without knowledge or information sufficient to form a belief as to the truth of the allegations as to ownership, and admitted that counsel for Plaintiff gave notice of the '111 patent to Bausch & Lomb in 2001.

## COUNT ONE

11.   ~~11.~~ Bausch & Lomb re-alleges its responses to the allegations of paragraphs 1-10 above and incorporates them by reference.

12.   ~~12.~~——Denied.

13.   ~~13.~~——Denied.

14.   ~~14.~~——Denied.

15.   ~~15.~~——Denied.

## COUNT TWO

16.   ~~16.~~——Bausch & Lomb re-alleges its responses to the allegations of paragraphs 1-15 above and incorporates them by reference.

2

17.   ~~17.~~—Denied.

## DEFENSES

### First Defense

18.   ~~18.~~—Bausch & Lomb is not infringing and has not infringed, either directly or indirectly, any valid claim of the '111 or '986 patent.

### Second Defense

19.   ~~19.~~—The claims of the '111 and '986 patents are invalid for failure to comply with one or more of the provisions of Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 102, 103, and 112.

### Third Defense

20.   The relief sought by Scieran is barred in whole or in part by the doctrine of laches.

### Fourth Defense

21.   The relief sought by Scieran is barred in whole or in part by the doctrine of unclean hands.

### Fifth Defense

22.   For the reasons described below in B&L's second counterclaim, the '111 and '986 patents are unenforceable due to inequitable conduct.

## COUNTERCLAIMS

For its counterclaims against Scieran, B&L alleges:

23.   These counterclaims arise under the patent laws of the United States, Title 35 of the United States Code. Scieran has asserted that B&L has infringed the '111 and '986 patents. B&L asserts that the claims of those patents are invalid and unenforceable. There is an actual

controversy between the parties as to the unenforceability and invalidity of the '111 and '986 patents. The Court has subject matter jurisdiction over this counterclaim pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

## COUNT ONE
### (Declaratory Judgment of Invalidity)

24. The asserted claims of the '111 and '986 patents are invalid for failure to comply with one or more of the provisions of Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 102, 103, and 112.

25. B&L is entitled to a declaration pursuant to 28 U.S.C. § 2201 that the '111 and '986 patents are invalid.

## COUNT TWO
### (Declaratory Judgment of Unenforceability)

26. The asserted claims of the '111 and '986 patents cover a surgical device having an inner cutter and an outer cutter, where the inner cutter has a slit and a pre-bent tip that exerts a spring force on the outer cutter. The applications for the '111 and '986 patents were filed on October 3, 1997. The '111 patent issued on July 10, 2001. The '986 patent issued on October 7, 2003, as a continuation of the '111 patent.

27. A company called Noetix had brought to two of the named inventors (Messrs. Ross and Boore) a device meeting the asserted claims in 1994 – years before their patent application. The inventors did not disclose that device to the United States Patent and Trademark Office ("PTO").

28. The cutting technology in Noetix's device was based on a product called the Diskecter, which was marketed by Sofamor Danek starting in 1994. Noetix told Messrs. Ross and Boore about the Diskecter. They prepared Scieran's January and February 1995 business

4

plans, which acknowledged that the Noetix device used the same cutting technology as the Diskecter. The inventors did not disclose this information to the PTO. The inventors did submit to the PTO one page from a Diskecter brochure, but without telling the PTO about the relationship between the Diskecter and their work. Moreover, they submitted that one page with an August 1997 fax line, but without the page showing a 1994 copyright date.

29. The inventors formed plaintiff Scieran, and the Noetix device – which they called the "Vit Commander" – was used in surgery and promoted at trade shows and conferences in 1995. In June 1995, Scieran created and publicly distributed a videotape of a physician using the Noetix Vit Commander in surgery. The inventors did not disclose this videotape to the PTO. Also in 1995, Scieran created and distributed a newsletter called the Vit Commander Report. The inventors did not disclose this newsletter to the PTO. Doctors used the Noetix Vit Commander in surgery in 1995. The inventors did not disclose this to the PTO. Nor did they disclose to the PTO that a physician had presented the Vit Commander at the September 1995 Retina Society Meeting in Santa Fe, New Mexico, or that other physicians had promoted the Noetix Vit Commander System at the 1995 A.A.O. meeting in Atlanta, GA. Additionally, the inventors failed to disclose to the PTO information posted on Scieran's website during the prosecution of the application for the '111 and '986 patents, including that a physician had used the Noetix Vit Commander in surgery.

30. After the business relationship between Noetix and Scieran broke down, Scieran's October 1995 business plan said that "the final device to be marketed will be developed from the [Noetix] prototype." The inventors did not disclose this to the PTO either.

31. Scieran claims to have developed a vitrectomy cutter (which it also called the "Vit Commander") in late 1995 that had the same cutter structure as Noetix's prototype. The named

5

inventors on the '111 and '986 patents, however, have no documents relating to their supposed conception of the inventions. Mr. Hughes (an engineer hired by Scieran in late 1995 after the Noetix-Scieran relationship ended) testified that he knew he had to pre-bend the tip of the inner cutter so that it would come into contact with the outer cutter, based on his experience with vitrectomy cutters, including his experience at a previous employer. The inventors applied for patents on this cutter structure without telling the PTO about the Noetix prototype or about Mr. Hughes' knowledge.

32. Throughout the summer of 1996, Scieran was promoting the Vit Commander to doctors and others. The inventors did not disclose any information concerning those activities to the PTO. Mr. Ross then destroyed any documents relating to those activities prior to the filing of this lawsuit.

33. The inventors also did not disclose to the PTO a July 1993 document from their files entitled "The Metamorphosis of Vitrectomy Cutters." The document shows, among other things, the cutter structure of a prior art vitrectomy device called the Ocutome. (In fact, Mr. Ross was a sales manager for the Ocutome earlier in his career.) The Ocutome was described as having a bent inner blade which creates a "spring effect." During prosecution of the applications for the '111 and '986 patents, the applicants did not disclose the information in this July 1993 document about the Ocutome having a "bent blade" causing a "spring effect" for "excellent cutting capabilities."

34. During prosecution of the application for the '111 patent, the inventors overcame a rejection by distinguishing the prior art Storz MicroVit device on the basis that it did not disclose "a tip which exerts a spring force on an outer sleeve." They did not, however, tell the Examiner about earlier testing done for them on the MicroVit, which reported that the

6

MicroVit's flared inner cutter "forces the inner cutter end out the port and then it is forced back in the tubing, resulting in zero clearance" – in other words, that the inner cutter exerts a spring force against the outer cutter. Although they argued to the PTO that this and another prior art device did not have a tip that exerted a spring force on the outer cutter, the inventors did not disclose to the PTO the "spring effect" of the bent inner cutter of the Ocutome, as set forth in the July 1993 "Metamorphosis" paper, or Mr. Hughes' knowledge of a prior art device where the inner cutter was bent so that it would touch the outer cutter.

35.  The named inventors on the '111 and '986 patents intentionally withheld from the PTO information material to the patentability of the claims of those patents, and misrepresented material information to the PTO, with an intent to deceive. For example, they intentionally withheld from the PTO the facts that: (1) Noetix brought the invention to them; (2) Scieran used and publicly displayed the Noetix prototypes in 1995, long before the critical date; (3) their "invention" was based on the cutting technology of the Diskecter; (4) at least one of the inventors knew about pre-bent inner cutters exerting a spring force on the outer cutters from his previous work experience; (5) Mr. Ross had in his files a July 1993 document that contained information highly material to the patentability of the claimed inventions; and (6) Scieran had test results that contradicted statements made to the PTO to distinguish a prior art vitrectomy device. Moreover, the named inventors signed declarations that they were the "original, first and joint inventors" of the subject matter claimed in the applications that matured into the '111 and '986 patents, even though they knew that Noetix had brought them the subject matter they were trying to patent.

36.  B&L is entitled to a declaration pursuant to 28 U.S.C. § 2201 that the '111 and '986 patents are unenforceable due to inequitable conduct.

7

## **PRAYER FOR RELIEF**

For the reasons set forth above, Bausch & Lomb prays that the Court:

a) Dismiss Plaintiff's First Amended Complaint with prejudice;

b) Enter judgment that the claims of the '111 and '986 patents are invalid;

c) <u>Enter judgment that the '111 and '986 patents are unenforceable;</u>

d) ~~e)~~ Enter judgment that Bausch & Lomb has not infringed, directly or indirectly, any valid claim of the '111 or '986 patent;

e) ~~d)~~ Award Bausch & Lomb its attorneys' fees and costs pursuant to 35 U.S.C. § 285; and

f) ~~e)~~ Grant such other and further relief as it may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Leslie A. Polizoti

Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

~~Dated: February 28, 2005~~

*Attorneys for Bausch & Lomb Incorporated*

8