IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCIERAN TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-1319 (SLR) |
| ) | |
| BAUSCH & LOMB INCORPORATED, ) | |
| ) | |
| Defendant. ) | |

**BAUSCH & LOMB'S REPLY BRIEF IN SUPPORT
OF ITS MOTION FOR LEAVE TO FILE AN AMENDED ANSWER**

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
lpolizoti@mnat.com
  *Attorneys for Defendant
  Bausch & Lomb Incorporated*

September 22, 2005

i.

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF CITATIONS | ii |
| ARGUMENT | 1 |
| I. B&L'S MOTION TO AMEND IS TIMELY | 1 |
| II. B&L'S MOTION IS NOT FUTILE | 4 |
|     A. B&L's Inequitable Conduct Defense and Counterclaims | 5 |
|     B. B&L's Laches Defense | 8 |
| III. THERE IS NO PREJUDICE TO SCIERAN | 9 |
| CONCLUSION | 11 |

## TABLE OF CITATIONS

| | Page(s) |
|---|---|

**Cases**

*Adv. Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.,*
  989 F. Supp. 1237 (N.D. Cal. 1996) .................................................. 4

*CCPI Inc. v. Am. Premier, Inc.,*
  967 F. Supp. 813 (D. Del. 1997) ...................................................... 1

*Conley v. Gibson,*
  355 U.S. 41 (1957) .......................................................................... 4

*Enzo Life Sci., Inc. v. Digene Corp.,*
  270 F. Supp. 2d 484 (D. Del. 2003) .................................................. 4

*Fox Indus., Inc. v. Structural Preservation Sys., Inc.,*
  922 F.2d 801 (Fed. Cir. 1990) .......................................................... 7

*General Tire & Rubber Co. v. Watson-Bowman Assoc., Inc.,*
  193 U.S.P.Q. 97 (D. Del. 1976) ....................................................... 2

*Halliburton Co. v. Schlumberger Technology Corporation,*
  925 F.2d 1435 (Fed. Cir. 1991) ..................................................... 5, 7

*Perseptive Biosys., Inc. v. Pharmacia Biotech, Inc.,*
  225 F.3d 1315 (Fed. Cir. 2000) ........................................................ 7

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.,*
  2003 WL 1475067 (D. Del. 2003) .................................................... 1

*Poly-America, Inc. v. GSE Lining Tech., Inc.,*
  1998 U.S. Dist. LEXIS 9996 (N.D. Tex. 1998) ................................ 8

*Symbol Techs., Inc. v. Proxim Inc.,*
  2003 WL 1905637 (D. Del. 2003) .................................................... 4

*Trueposition, Inc. v. Allen Telecom, Inc.,*
  2002 WL 1558531 (D. Del. 2002) .................................................. 10

1.

Bausch & Lomb ("B&L") has moved for leave to file an amended answer to assert the affirmative defenses of laches, unclean hands and inequitable conduct and to counterclaim for a declaratory judgment of invalidity and unenforceability (D.I. 69). Even though B&L filed its motion before the deadline in the scheduling order, Scieran opposes it as untimely. Scieran also opposes the motion as futile, even though it does not dispute that B&L has adequately pled inequitable conduct. Scieran also argues that the motion should be denied because it will be inconvenienced (which it calls "prejudiced") by having to write a summary judgment brief and to defend against B&L's charges at trial. This is B&L's reply in support of its motion for leave to amend.

ARGUMENT

I. B&L'S MOTION TO AMEND IS TIMELY

Scieran argues that B&L's motion is untimely because the alleged facts are not "new," as B&L supposedly learned them from Scieran's April 2005 document production and from B&L's relationship with Promex (D.I. 74 at 13).[1]

Scieran simply ignores the fact that B&L filed its motion to amend before the September 2, 2005 deadline in the Court's scheduling order (D.I. 17 at ¶3). For this reason alone, B&L's motion is timely. *See Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 2003 WL 1475067 (D. Del. 2003); *see also CCPI Inc. v. Am. Premier, Inc.*, 967 F. Supp. 813, 815, n.2 (D. Del. 1997). Moreover, because of the public interest in bringing inequitable conduct and unclean hands to light, courts have permitted amendment to

---

[1] Promex is the company in Indiana that manufactures the accused products for B&L. It is the successor to Noetix, the company whose prototype product Scieran used in 1994-1995.

allege those matters even on the eve of trial. *General Tire & Rubber Co. v. Watson-Bowman Assoc., Inc.*, 193 U.S.P.Q. 97, 98-99 (D. Del. 1976).

In any event, the only delay here was by Scieran. In early May, B&L tried to get discovery on issues relating to patent prosecution by propounding interrogatories. Scieran refused to answer them, in part because "there are alternative discovery devices more suitable to such inquiry" – like depositions (Ex. A at 12-14).[2]

In May, B&L also noticed a Rule 30(b)(6) deposition of Scieran relating to patent prosecution, including the disclosure of information to the PTO, for June (D.I. 48). Scieran produced its Rule 30(b)(6) designee, Chris Boore (one of the named inventors), on July 29. Mr. Boore was admittedly totally unprepared. He did not even know what a file history was – let alone anything that had happened during the prosecution of the applications for the patents-in-suit (Ex. B, Boore Tr. at 24-25):

> Q. Did you look at what are sometimes called the prosecution histories or the file histories of any of the three patents that you talked about [the patents-in-suit and a related patent]?
>
> A. I don't even know what those are. Can you tell me what a prosecution history is?
>
> Q. It is the back and forth between a patent applicant and the Patent Office when you apply for a patent.
>
> A. No.
>
> Q. Were you involved at all in the prosecution of the applications for the three patents?
>
> A. No.

---

[2] Scieran also refused to answer those interrogatories because they supposedly "exceed[ed] the maximum of 25 in number in violation of the Court's Scheduling Order" (Ex. A at 12-14). B&L disagrees.

\*   \*   \*

Q. Did you do anything today in preparation for your deposition today to educate yourself in any way about what happened during the prosecution of the application for the three patents?

A. No.

\*   \*   \*

Q. [D]o you have any knowledge of the specifics of what happened during the prosecution of the applications for these three patents?

A. I have no knowledge about that.

Mr. Boore testified that it was Rod Ross, another inventor, who had such knowledge (*id.* at 103). Scieran then designated Mr. Ross, who was deposed on August 11-12. Less than two weeks later, on August 22, B&L took the deposition of Ben Yorks, the attorney who prosecuted the patents-in-suit. Four days later, on August 26, B&L sent Scieran its proposed amended answer.

Ignoring all of that, Scieran argues that B&L's allegations are not new because Scieran produced documents earlier in the case: "In good faith, Scieran has produced a great number of documents regarding its promotional efforts including its business plans before and after the breakup with Noetix" (D.I. 74 at 27). That is simply wrong. All but one of Scieran's business plans – which disclosed its relationship with Noetix – were produced by third parties, not by Scieran. In fact, most of the documents B&L relied on in its proposed amended answer were produced by third parties in response to B&L's subpoenas. There is a reason for that – Mr. Ross testified on August 11 that, back in 2001, he destroyed 75% of the documents Scieran had (Ex. C, Ross Tr. at 27-28).

4.

In any event, those documents alone did not tell B&L about intent to deceive. Additional information was learned through depositions. *See, e.g., Enzo Life Sci., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 489 (D. Del. 2003) ("[s]ince the Rule 9(b) 'pleading with particularity' requirement is implicated with regard to an inequitable conduct claim, Digene was prudent and possibly required to confirm the factual allegations through discovery [including depositions]."); *see also Adv. Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 989 F. Supp. 1237, 1247 (N.D. Cal. 1996) (granting motion to amend when Defendant sought leave "to raise a new theory based on a new set of facts only recently confirmed by SciMed [in depositions]" and noting that Defendant should be able to "confirm factual allegations before amending to include the inequitable conduct defense.").

## II.   B&L'S MOTION IS NOT FUTILE

A proposed amendment is futile only if it would not withstand a motion to dismiss, *i.e.*, whether, taking all of B&L's allegations as true, and drawing all reasonable factual inferences in its favor, B&L could prove no set of facts which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Symbol Techs., Inc. v. Proxim Inc.*, 2003 WL 1905637 (D. Del. 2003); *see also Enzo*, 270 F. Supp. 2d at 489. The standard is not, as Scieran suggests, whether B&L would be successful on an "inevitable" motion for summary judgment (D.I. 74 at 3).[3]

---

[3]   Scieran cited *Milanese v. Rust-Oleum Corporation*, 244 F.3d 104 (2d Cir. 2001), to invite the Court to treat B&L's motion under the higher standard of summary judgment. In *Milanese*, however, the Second Circuit decided that it could apply the summary judgment standard to deny the amendment as futile only when plaintiff cross-moved to amend in response to defendant's motion for summary judgment. Here, B&L's motion to amend was not filed in response to a summary
(continued . . .)

A.  B&L's Inequitable Conduct Defense and Counterclaims

Although Scieran submitted twenty-plus pages of argument about why the named inventors did not commit inequitable conduct, not once did it dispute that B&L properly stated an inequitable conduct defense and counterclaim.[4]  For this reason alone, B&L's motion should be granted.  B&L, in fact, alleged specific facts in detail supporting its proposed claims and defenses.

Contrary to what Scieran argues, B&L's inequitable conduct case is meritorious.  B&L has alleged the facts underlying its inequitable conduct defense and counterclaim in great detail (D.I. 69, Ex. 1 at ¶¶26-36).  For instance, B&L alleges that a company called Noetix had brought to Messrs. Ross and Boore a device meeting the asserted claims years before their patent application (*id.* at ¶27).  According to Scieran, the Noetix device was cumulative to the Miller patent, which was submitted during prosecution of the '111 patent, because both disclose a circumferential slit (D.I. 74 at 7).  Scieran also argues that there is no inequitable conduct because neither Noetix nor the Miller patent disclosed a pre-bent tip that exerts a spring force, as required by the claims, and the Federal Circuit has held that "even inclusion of prior art in claims is no violation."  *Halliburton Co. v. Schlumberger Tech. Corp.*, 925 F.2d 1435, 1442 (Fed. Cir. 1991).

---

(. . . continued)
   judgment motion (which, pursuant to the scheduling order, cannot be filed until February 2006).

[4]  Scieran argues that B&L should not be permitted to add a counterclaim for declaratory judgment of invalidity (D.I. 74 at 28-29).  This counterclaim, however, adds no new issues to the case.  It merely preserves B&L's ability to litigate invalidity even if Scieran loses on infringement.

6.

First, B&L alleges that Noetix brought Scieran a device meeting the asserted claims of the '111 and '986 patents (D.I. 69, Ex. 1 at ¶32) – not a device with a circumferential slit. Moreover, even accepting its position, Scieran ignores what actually happened during prosecution. In fact, the named inventors put the exact structure shown in Figure 3 of the Miller patent into their patent application, told the PTO they had invented it, and tried to patent it themselves. Figure 3 of the Miller patent is set forth below (20 is the inner cutter and 40 is the "hinge slot" that is "cut circumferentially" around the inner cutter):



***Fig. 3***

Figure 6 of the patents-in-suit is set forth below (104 is the inner cutter (called an "inner sleeve") and 112 is the "circumferential slit"):



FIG. 6

Figure 6 of the patents-in-suit is identical in all material respects to Figure 3 of the Miller patent. They are just facing opposite directions.

When the named inventors first included Figure 6 in their application, their proposed claim 1 said nothing about a pre-bent tip or a spring force. It claimed a cutter with an inner sleeve that "has a circumferential slit located at a distal end of said inner sleeve" (emphasis added) (Ex. D at 29):

    1.  A surgical cutter, comprising:

An outer sleeve which has an aspiration port that is in fluid communication with an inner channel; and,

An inner sleeve that is located within said inner channel of said outer sleeve, *and which has a circumferential slit located at a distal end of said inner sleeve.*

The inventors simply did not invent that, but they claimed that they did.[5] It does not matter that the claims that ultimately issued and that are asserted here include an additional feature. *Fox Indus., Inc. v. Structural Preservation Sys., Inc.*, 922 F.2d 801, 803-04 (Fed. Cir. 1990) ("In determining inequitable conduct, a trial court may look beyond the final claims to their antecedents. … Therefore, a breach of the duty of candor early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application."); *see also Perseptive Biosys., Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1322 (Fed. Cir. 2000).

    Unlike in *Halliburton* – where the Court stated that the "inventors did not represent that they invented this step [from the prior art]" – Messrs. Ross, Boore and Hughes all signed a declaration that they were the "original, first and joint inventor[s]…of the subject matter which is claimed," including the subject matter of claim 1 (Ex. E). It plainly is inequitable conduct for applicants to try to patent someone else's invention by swearing that they invented it. *See Perseptive*, 225 F.3d at 1321-22; *see also Halliburton*, 925 F.2d at 1442. That is exactly what Messrs. Ross, Boore and Hughes did.

---

[5] This issue relates directly to B&L's pending motion for *in camera* inspection (D.I. 70). Mr. Ross has testified that he did not know "anything" about the design of the Noetix device, even though the document that was "inadvertently" produced shows that he did.

Scieran even acknowledges that it used the Noetix device to promote its commercial device, which it says is covered by the asserted claims, before and during the prosecution of the applications for the patents-in-suit. Mr. Ross' only explanation for Scieran's use of the Noetix device to market its own device – in its business plans, on its website, in articles, and in letters to potential investors and customers – was that there was a long series of "mistakes" (Ex. C, Ross Tr. at 224-27; 230-31; 234-39; 242-45; 250-52; 283-84). The applicants told everyone except the PTO that their "invention" had been developed by Noetix and publicly presented more than a year before their patent application.

And B&L has alleged much more than this – including that the inventors intentionally withheld from the PTO prior art literature and devices that were contrary to arguments they made to overcome a rejection (D.I. 69, Ex. 1, ¶¶33-34).[6]

### B. B&L's Laches Defense

Scieran argues that B&L's laches defense is inadequate because it "failed to allege, even at this late stage, that Scieran's delay in filing suit was 'unreasonable and inexcusable'" (D.I. 74 at 24). That is not the standard. *Poly-America, Inc. v. GSE Lining Tech., Inc.*, 1998 U.S. Dist. LEXIS 9996, *21-23 (N.D. Tex. 1998) (holding the following sufficient to state a claim for laches: "the '272 patent is unenforceable and Defendant is

---

[6] Scieran also argues that if B&L "intends to rely on other facts [to support its unclean hands defense], it has not provided notice of them or plead them with sufficient specificity" (D.I. 74 at 23). Scieran does not dispute that, to the extent B&L's unclean hands defense is based on inequitable conduct, it is properly pled. To the extent that it is not, only notice pleading under Fed. R. Civ. P. 8 is required, and B&L has explained the bases for its unclean hands defense (D.I. 69 at ¶14).

9.

barred from obtaining any relief based on the patent because of estoppel, laches and unclean hands."). Laches does not have to be pled with particularity and B&L has pled it adequately. Scieran's positions about why it waited so long to sue (D.I. 74 at 25-26) and that its document destruction is (somehow) not "relevant" to a laches defense (*id*. at 26), do not matter for purposes of this motion to amend.

In any event, B&L's laches defense is based on the facts of (1) delay (that Scieran waited years after its '111 patent issued to sue B&L) and (2) prejudice (that after Mr. Ross knew that Scieran would likely sue B&L, he destroyed 75% of Scieran's documents relating to the Vit Commander). Scieran does not dispute that Mr. Ross destroyed documents (*id*. at 21). Incredibly, it argues that "none of the documents he destroyed were of any practical or relevant value to this case" (*id*.). Yet, at the same time, Scieran criticizes B&L for not being more specific about its allegation that Scieran was promoting the Vit Commander to doctors and potential investors in the summer of 1996 (*id*. at 20). Mr. Ross testified that "there was no doubt in my mind" that Scieran was promoting the Vit Commander during the summer of 1996. Yet the documents reflecting such promotion have not been produced (Ex. C, Ross Tr. at 249). It is ironic that Scieran criticizes B&L for not identifying the specific documents that Scieran apparently destroyed. Mr. Ross' destruction of documents caused B&L to suffer exactly the type of evidentiary prejudice that warrants a laches defense.

### III.   THERE IS NO PREJUDICE TO SCIERAN

Scieran also argues that it will be prejudiced by the proposed amendment because it would have to "prepare summary judgment motion papers and argument" on the defenses and counterclaims (D.I. 74 at 2) and would have to "defend these charges in

court with at least the evidence put forth here" (*id*. at 15). But "inconvenience" is not legal prejudice, which requires Scieran to demonstrate that it will be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence." *Trueposition, Inc. v. Allen Telecom, Inc.*, 2002 WL 1558531, *2 (D. Del. 2002). Scieran has sued B&L on two patents. B&L moved to amend because it appears that the named inventors committed inequitable conduct. B&L's motion should not be denied because Scieran does not want to write a brief or defend its conduct before the PTO at trial.

Scieran also complains that B&L's allegations will make trial "significantly longer" and are "an improper attempt to interject and pollute the case with fraud in the event the case makes it to the jury" (D.I. 74 at 15). This Court's practice, however, is not to try inequitable conduct to the jury. The Court has set aside two weeks for trial (D.I. 17 at 5). Scieran does not explain, and it is difficult to imagine, how the addition of these defenses and counterclaims would cause the trial to last any longer than that.

Scieran does not assert that it needs additional discovery to defend against the proposed defenses and counterclaims. In fact, if it wanted more discovery, there were still two months left in fact discovery when B&L filed its motion. In any event, the facts relating to inequitable conduct are solely in Scieran's control. Scieran will simply not suffer any prejudice if B&L's motion to amend is granted.

11.

## CONCLUSION

B&L's motion to amend should be granted. The motion was timely filed, is not futile, and will not prejudice Scieran.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Leslie A. Polizoti

---
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
lpolizoti@mnat.com
  *Attorneys for Defendant*
  *Bausch & Lomb Incorporated*

September 22, 2005

484025

CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2005, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to Josy W. Ingersoll, Edward O'Connor, Craig McLaughlin, and Becky Christensen.

I also certify that on September 22, 2005, I caused to be served true and correct copies of the foregoing document on the following in the manner indicated below:

**BY HAND**

Josy W. Ingersoll
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

**BY FEDERAL EXPRESS**

Edward O'Connor
Craig McLaughlin
O'CONNOR CHRISTENSEN & MCLAUGHLIN LLP
1920 Main Street, Suite 150
Irvine, CA  92614

/s/ Leslie A. Polizoti
MORRIS, NICHOLS, ARSHT AND TUNNELL
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com