UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| **SCIERAN TECHNOLOGIES, INC.,**<br>a California corporation, | Case No.: 04-1319 (SLR) |
| Plaintiff, | **Redacted Version -**<br>**Publicly Filed** |
| vs. | |
| **BAUSCH & LOMB INCORPORATED,**<br>a New York corporation, | **PLAINTIFF SCIERAN TECHNOLOGIES,<br>INC.'S OPPOSITION TO DEFENDANT'S<br>MOTION FOR LEAVE TO FILE FIRST<br>AMENDED ANSWER TO FIRST<br>AMENDED COMPLAINT** |
| Defendant. | |

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ..........................................................1

SUMMARY OF ARGUMENT....................................................................................1

ARGUMENT.................................................................................................................2

   THE LEGAL STANDARD FOR LEAVE TO AMEND ........................................2

   BAUSCH'S "NEW FACTS" ARE NOT NEW, ARE NOT FACTS AT ALL,
   AND CANNOT BE A BASIS UPON WHICH RELIEF CAN BE GRANTED.............4

      Bausch's Proposed Inequitable Conduct Defense And Counterclaim For
      Unenforceability Should Not Be Allowed .....................................................................4

      Scieran's Early Knowledge, If There Was Any At All, Of The Notetix Device Is
      Irrelevant..........................................................................................................................6

      Bausch Seeks The Court's Assistance To Allow Leave To Continue To Allege Its
      False And Completely Unsupported Allegations .........................................................13

      Bausch's Proposed Unclean Hands Defense Relies On The Same Unsupported
      And Vague Allegations And Should Also Not Be Allowed .........................................23

      Bausch's Proposed Laches Defense Is Defective On Its Face And Relies On
      Unsupported And Vague Allegations And Should Also Not Be Allowed...............24

      Bausch's Motion To Add Asserted Counterclaim Of Invalidity Cites No
      Grounds And Violates Rule 13(A) And Should Not Be Allowed ..............................28

CONCLUSION ...........................................................................................................29

# TABLE OF AUTHORITIES

## CASES

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,*
  960 F.2d 1020 (Fed. Cir. 1992)..................................................................................24
*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.,*
  988 F.2d 1157 (Fed. Cir. 1993) .................................................................................24
*Akzo N.V. v. U.S. Int'l Trade Comm'n,*
  808 F.2d 1471 (Fed. Cir. 1986)..................................................................................19
*Bobbitt v. Victorian House, Inc.,*
  532 F. Supp. 734 (D. Ill. 1982) ..................................................................................24
*Burlington Indus., Inc. v. Dayco Corp.,*
  849 F.2d 1418 (Fed. Cir. 1988)..................................................................................15
*Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.,*
  394 F.3d 126 (3d Cir. 2004) ........................................................................................3
*Dal-Tile Corp. v. United States,*
  23 C.I.T. 631 (Ct. Int'l Trade 1999) ..........................................................................15
*EMC Corp. v. Storage Tech. Corp.,*
  921 F. Supp. 1261 (D. Del. 1996).....................................................................5, 20, 22
*Ferguson Beauregard/Logic Controls, Division of Dover Res., Inc. v. Mega Sys., LLC,*
  350 F.3d 1327 (Fed. Cir. 2003)..........................................................................5, 20, 22
*Fleet Bus. Credit Corp. v. National City Leasing Corp.,*
  191 F.R.D. 568 (D. Ill. 1999) .....................................................................................28
*FMC Corp. v. Manitowoc Co.,*
  835 F.2d 1411 (Fed. Cir. 1987)...........................................................4, 7, 15, 16, 20
*Foman v. Davis,*
  371 U.S. 178 (1962) ..................................................................................................2, 3
*Halliburton Co. v. Schlumberger Technology Corp.,*
  925 F.2d 1435 (Fed. Cir. 1991).............................................7, 16, 17, 19, 20, 27
*Hewlett-Packard Co. v. Bausch & Lomb,*
  909 F.2d 1464 (Fed. Cir. 1990)..................................................................................20
*Hollister, Inc. v. Kingsdown Medical Consultants, Ltd.,*
  490 U.S. 1067 (1989) ..................................................................................................16
*In re Burlington Coat Factory Sec. Litig.,*
  114 F.3d 1410 (3d Cir. 1997)....................................................................................3, 15
*In re NAHC, Inc. Sec. Litig.,*
  306 F.3d 1314 (3d Cir. 2002)........................................................................................3
*Intel Corp. v. Hyundai Electronics America, Inc.,*
  692 F. Supp. 1113 (D. Cal. 1987) ..............................................................................23
*Keystone Driller Co. v. General Excavator Co.,*
  290 U.S. 240 (1933) ....................................................................................................23
*Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.,*
  863 F.2d 867 (Fed. Cir. 1988)..........................................................................16, 18, 22

## CASES (Cont.)

*Klein v. Autek Corp.,*
  2005 U.S. App. LEXIS 19155 (3d Cir. 2005)........ ............................................ ....15
*Linear Tech. Corp. v. Micrel, Inc.,*
  275 F.3d 1040 (Fed. Cir. 2001)...............................................................................21
*Med. Graphics Corp. v. Hartford Fire Ins. Co.,*
  171 F.R.D. 254 (D. Minn. 1997).................................................................................3
*Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co.,*
  2005 U.S. Dist. LEXIS 15928, *11 (D.NJ 2005)......................................................3
*Meyers v. Asics,*
  974 F.2d 1304 (Fed. Cir. 1992)...............................................................................27
*Milanese v. Rust-Oleum Corp.,*
  244 F.3d 104 (2nd Cir. 2001)....................................................................................3
*New Valley Corp. v. Corporate Prop. Assocs. 2 & 3 (In re New Valley Corp.),*
  181 F.3d 517 (3d Cir. 1999)..............................................................................23, 24
*Northern Engineering & Plastics Corp v. Blackhawk Molding Co., Inc.,*
  205 U.S.P.Q. (BNA) 609 (N.D. Ill. 1979) ...............................................................23
*Regents of Univ. of Cal. v. Eli Lilly & Co.,*
  119 F.3d 1559 (Fed. Cir. 1997).......................................................4, 7, 18, 19, 23
*Scripps Clinic & Research Found. v. Genentech, Inc.,*
  927 F.2d 1565 (Fed. Cir. 1991)..................................................................................7
*Wesley Jessen Corp. v. Bausch & Lomb, Inc.,*
  209 F. Supp. 2d 348 (D. Del. 2002) .......................................................................19

## RULES

Rule 7(b), Fed. R. Civ. Proc. ...................................................................................29
Rule 9(b), Fed. R. Civ. Proc. ...............................................................5, 14, 20, 23
Rule 12(b)(6), Fed. R. Civ. Proc..............................................................................3
Rule 12(f), Fed. R. Civ. Proc. .............................................................................2, 3
Rule 13(a), Fed. R. Civ. Proc. ................................................................................29
Rule 15(a), Fed. R. Civ. Proc..................................................................................29
Rule 30(b)(6), Fed. R. Civ. Proc...........................1, 5, 9, 13, 15, 16, 17, 18, 26
Rule 56(c), Fed. R. Civ. Proc...................................................................................3
Fed.R.Civ.P App. Form 20 ......................................................................................24

## TREATISES

6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE §
  1487, at 623-26 (2nd Ed. 1990)..............................................................................15

## INTRODUCTION

Plaintiff SCIERAN TECHNOLOGIES, INC. ("Scieran"), hereby opposes the instant Motion For Leave To File First Amended Answer To First Amended Complaint served by Defendant BAUSCH & LOMB INCORPORATED ("Bausch"). Bausch seeks at this late juncture, nearly a full year after the case was filed, to add three affirmative defenses - inequitable conduct, unclean hands and laches - as well as two counterclaims for unenforceability and invalidity.

## NATURE AND STAGE OF PROCEEDINGS

This is a patent infringement action asserting infringement of two of Scieran's patents. The Complaint was filed by Scieran on September 30, 2004. [D.I.] Bausch filed its Answer on November 22, 2004 [D.I. 7]. Scieran filed its First Amended Complaint on February 15, 2004 [D.I. 15]. Bausch file its Answer to the First Amended Complaint on February 28, 2005 [D.I. 20]. Both parties have answered interrogatories and exchanged documents shortly after discovery began. Since discovery began, Bausch has taken the deposition of Scieran and Mr. Rod Ross as well as Scieran's prosecuting patent attorney, Mr. Ben Yorks. Fact discovery closes on October 28, 2005, pursuant to the entered Scheduling Order [D.I. 17]. Concurrent with the filing of this motion, Bausch also filed an Application for In Camera Inspection which Scieran intends to oppose.

## SUMMARY OF ARGUMENT

1.    Bausch asserts that it was only during the Rule 30(b)(6) depositions of Mr. Ross, Scieran and its patent prosecuting attorney, Mr. Ben Yorks, in July and August 2005, that it acquired the grounds for the proposed defenses. Bausch, however, has misrepresented the facts and bases its proposed Amended Answer thereon. Other facts alleged by Bausch are nothing but irrelevant and inconsequential smoke that, even if true, cannot possibly support a finding in its favor.

2.    In its proposed pleading, Bausch presents no new and relevant facts. Bausch has had full opportunity to plead its defenses and counterclaims when it answered Complaint and again, three months later, when it answered the First Amended Complaint. With fact discovery set to close on October 28, 2005, it should not be allowed to do so now.

3.    Bausch is basing its proposed defenses of inequitable conduct and unclean hands as well as its proposed counterclaim for unenforceability on the same "newly" acquired information resulting from the Rule 30(b)(6) depositions of Scieran. However, the proposed defense of inequitable conduct is baseless. Accordingly, so is the proposed defense of unclean hands and counterclaim for unenforceability.

4.    Bausch's proposed laches defense suffers from additional defects, including Bausch's failure to plead necessary elements.

5.    As for Bausch's proposed compulsory counterclaim for invalidity, Bausch did not state under what grounds it seeks leave to suddenly add this counterclaim. Indeed, Bausch does not indicate anything that it newly discovered to support this counterclaim, which is especially troubling in view of its long existing asserted defense of invalidity.

6.    As this opposition will show, the proposed defenses and counterclaims are unsupported, untimely and futile and, if granted, would prejudice Scieran in having to prepare summary judgment motion papers and argument warranting summary judgment on the same defenses and counterclaims.

## ARGUMENT

### THE LEGAL STANDARD FOR LEAVE TO AMEND

Leave to amend "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 181-182 (1962). However, such leave should only be granted in the absence of "undue delay, bad faith, or dilatory motive on the part of movant, repeated

2

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman*, 371 U.S. at 182 (emphasis added). Defendant, however, has not shown that justice requires the relief it seeks. Bausch's motion should be denied on the grounds that its motion is without basis in fact, has been brought after undue delay, has been brought after repeated attempts to cure its deficiencies, **and** is futile.

According to the Third Circuit, "an amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).* "[L]eave to amend an answer should be denied if the proposed defenses are legally insufficient ... so as to invite a motion to strike under *Rule 12(f)." Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co.,* 2005 U.S. Dist. LEXIS 15928, *11 (D.NJ 2005) quoting *Med. Graphics Corp. v. Hartford Fire Ins. Co., 171 F.R.D. 254, 257 (D. Minn. 1997).* Indeed, Rule 12(f) specifically allows the court, under its own initiative, to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

In assessing the "futility" of an amendment, the Court "applies the same standard of legal sufficiency as applies under *Rule 12(b)(6)." In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997). "In making this determination, we need not credit a complaint's bald assertions or legal conclusions." *Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (dismissal affirmed after failure to plead with sufficient specificity in second amended complaint).

Additionally, where substantial discovery has been conducted and a motion for summary judgment would be inevitable, as here, the Court may apply the standard of Rule 56(c) and "deny amendment as futile when evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law." *Milanese v. Rust-Oleum Corp.,* 244 F.3d 104, 110 (2nd Cir. 2001). Under each of the above standards, Bausch's motion for leave to amend should be

denied.

## BAUSCH'S "NEW FACTS" ARE NOT NEW, ARE NOT FACTS AT ALL, AND CANNOT BE A BASIS UPON WHICH RELIEF CAN BE GRANTED

In its proposed Amended Answer and motion, Bausch alleges that Scieran intentionally withheld material information from the PTO during the prosecution of the patents-in-suit which, as alleged by Bausch, constituted inequitable conduct. Bausch bases its untimely motion on facts it allegedly uncovered at the depositions of Scieran. Bausch makes this claim because it realizes is too late to amend without such allegations. As will be seen, this assertion too is baseless.

### Bausch's Proposed Inequitable Conduct Defense and Counterclaim for Unenforceability Should Not Be Allowed

"An infringer asserting an inequitable conduct defense must prove by clear and convincing evidence that the applicant or his attorney failed to disclose material information or submitted false material information to the PTO, with an intent to deceive the PTO." *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1574 (Fed. Cir. 1997).

The Federal Circuit also requires that:

[O]ne who alleges a "failure to disclose" form of inequitable conduct must offer clear and convincing proof of: (1) prior art or information that is material; (2) knowledge chargeable to applicant (or its attorney) of that prior art or information and of its materiality; and (3) failure of the applicant to disclose the art or information resulting from an intent to mislead the PTO. That proof may be rebutted by a showing that: (a) the prior art or information was not material (e.g., because it is less pertinent than or merely cumulative with prior art or information cited to or by the

4

PTO:) (b) if the prior art or information was material, a showing that applicant did not know of that art or information; (c) if applicant did know of that art or information, a showing that applicant did not know of its materiality; (d) a showing that applicant's failure to disclose art or information did not result from an intent to mislead the PTO. *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987).

Additionally, it is well settled that a claim of inequitable conduct requires that the pleading conform to the rigors of Rule 9(b) of the Fed. R. Civ. Proc.. *EMC Corp. v. Storage Tech. Corp.*, 921 F. Supp. 1261, 1263 (D. Del. 1996) (requires notice of the "precise" misconduct alleged); *Ferguson Beauregard/Logic Controls, Division of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) (facts cannot be inferred to support inequitable conduct claim which must be pled with particularity).

Scieran filed this action (D.I. 1) on September 30, 2004, charging Defendant with willful infringement of two of its patents: U.S. Patent No. 6,258,111 ("the '111 patent") ['111 patent, **Ex. 1**], which issued on July 10, 2001, of which Scieran has since asserted only Claim 3, and U.S. Patent No. 6,629,986 ("the '986 patent") ['986 patent, **Ex. 2**], which issued on October 7, 2003, of which Scieran has asserted Claims 1-4. Scieran filed suit after it had sent a warning letter of infringement to Defendant on August 30, 2001, including a claims chart and depictions of the accused device, and after the '986 patent had issued. [Aug. 30, 2001 letter with encl., **Ex. 3**] At its deposition on June 30, 2005, a Rule 30(b)(6) witness for Promex, Bausch's supplier[1] of the accused product, testified

---

[1]

**REDACTED**

that it has continued to sell the accused products to Bausch. Bausch continues to market and resell them.

### Scieran's Early Knowledge, If There Was Any At All, of the Noetix Device Is Irrelevant

In its motion and in paragraphs 27-30 of its proposed Amended Answer, Bausch attempts to paint Scieran as a deriver alleging that Scieran knew intimate structural details about the cutting tip of the Diskecter produced by Promex and the cutting tip of the "Vit Commander" then produced by Noetix (Promex has since acquired Noetix). This is patently false. Bausch conveniently disregards the sworn testimony of Scieran inventors Mr. Chris Boore, Mr. Greg Hughes and Mr. Rod Ross who each testified that they had never seen the structure of the inner cutter of the Noetix device even though they had taken possession of used prototypes from Noetix's president after testing by surgeons on subjects. Indeed, the structure of the inner cannula was concealed from view inside the outer cannula which were never taken apart by Scieran.

Scieran did not derive any relevant detail from either of these cutters. As will be shown below, Scieran independently invented and developed its own vitrectomy system including a console, motorized hand piece, cutter assembly, and an inner cutter tip which is patently distinct from any prior art device from Noetix, Promex, Bausch or anyone else. Having coined the mark, Scieran then called its system the "Vit Commander[2]."

As will also be shown, even if Scieran had viewed the inner cutter and obtained

REDACTED

---

[2]     Scieran had been marketing the Noetix vitrectomy system which Scieran called the "Vit Commander" until the relationship with Noetix was terminated by Noetix in September of 1995. Thereafter, Scieran decided to develop its own high speed vitrectomy device and, without dispute, took the "Vit Commander" mark it owned with it. In fact, Scieran applied for and was granted a registration on the Vit Commander® mark without opposition. Noetix had terminated Scieran because Noetix/Promex was courting Storz (whom Bausch later acquired) as a purchaser and distributor for its cutters.

intimate knowledge of the Noetix device, which it did not, any disclosure by Scieran of the Noetix device would have been inconsequential as such knowledge would have been cumulative of Scieran's disclosure of the Miller patent. Indeed, according to Mr. Miller himself, the cutting tip of the Diskecter and the Noetix device are the same as that disclosed in his '849 patent, a patent which had been disclosed by Scieran to the PTO and was distinguished.

With respect to a charge of inequitable conduct, a cumulative reference is not material. Indeed, "even where an applicant fails to disclose an otherwise material prior art reference, that failure will not support a finding of inequitable conduct if the reference is simply cumulative to other references." *Regents of Univ. of Cal.*, 119 F.3d at 1574-1575 (holding of materiality and intent to deceive reversed) citing *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1582, (Fed. Cir. 1991) (lack of evidence as to either materiality or intent to deceive affirmed); *Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1442 (Fed. Cir. 1991) (holding of inequitable conduct reversed). Inequitable conduct cannot be "established upon a mere showing that art or information having some degree of materiality was not disclosed." *FMC Corp.*, 835 F.2d at 1415.

Bausch, however, relies heavily on the supposed import of the structure of the Noetix high speed vitrectomy cutter which, according to Promex, was a miniaturized version of the Diskecter, a device that Promex sold to Sofomor Danek beginning in 1994 and used to excise nucleus pulposa from intervertibrael discs in the human spine. And Promex would know about both of them since it made the Diskecter and the Noetix cutter. Mr. Michael Miller, inventor of the Diskecter and the Noetix cutter agrees.

> Q:    What are all the, if you can itemize for me, the differences between the Danek cutter and the vitrectomy cutters?
>
> A:    In our manufacture and Promex manufacture, almost nothing. I mean, it just shrinks and expands.

Q:    When you say shrinks and expands, do you mean the size?

A:    The size, yeah. The diameter is obviously greatly different, but the relative geometry of the devices are remarkably similar.

[Depo of Promex, Mike Miller designee, **Ex. 4**, 17:10-19]

Bausch's answer to Scieran's interrogatory no. 8 is the same. "The Noetix 'Vit Commander' is a smaller version of the Diskecter." [Bausch's Answer to Scieran Rogg., **Ex. 5**, pg. 8, last full para.]

U.S. Patent No. 5,782,849 to Miller ("the '849 patent" or "Miller patent") was filed as a continuation on July 31, 1994 and issued, after appeal to the Patent Board of Appeals, in July 21, 1998. The Miller patent shows and describes a reciprocal guillotine cutter having a slitted, but straight inner cannula. [Miller patent, **Ex. 6**, Figs. 2-3]

The second page of the '111 patent shows that Scieran disclosed the Miller patent to the PTO. [Scieran '111 patent, **Ex. 1**] As the file histories produced by Scieran in April 2005 show, the Examiner not only considered the Miller patent, but also expressly distinguished it.

Claim 3 of the '111 patent, as corrected, reads:

A surgical device, comprising:
an outer sleeve that has an aspiration port which is in fluid communication with an inner channel of said outer sleeve;
an inner sleeve that is located within said inner channel of said outer sleeve, said inner sleeve having a tip that has a circumferential slit and a preexisting bend before insertion into said outer sleeve so that said tip exerts a spring force on said outer sleeve; and,
a motor that moves said inner sleeve relative to said outer sleeve.

Importantly, there is no mention anywhere in the Miller patent that the inner cutter has a pre-bent tip or that one is pre-bent sufficiently to exert a spring force on the outer cutter. Truth be told, the Miller patent and Mr. Miller himself teach away from employing a pre-bent tip so as to exert a spring force on the outer cannula. Indeed, the Miller patent expressly teaches maintenance of a clearance space between the inner and

8

outer cutters. "As the inner cannula 20 advances toward the cutting opening 14 of the
outer cannula, it maintains a clearance C between the two tubes." [Miller patent, **Ex. 6**,
col. 5, lns. 11-13] "[A] smooth sliding fit between the two cannulae further requires
some clearance between the two components." [Miller patent, **Ex. 6**, col. 7, lns. 18-25).

In further teaching, the Miller patent discloses bending of the cutting tip to a zero
clearance, but only *as a result* of encountering tissue. Indeed, it is the tissue which
*causes* the cutting tip to bend. "Resistance from the tissue causes the cutting head to
pivot about the hinge to form an essentially zero clearance between the cutting head and
the cutting opening in the outer cannula." [Miller patent, **Ex. 6**, col. 2, lns. 21-25.

A cutter having a sufficient pre-bend in the tip so as to exert a spring force on the
outer cannula would be pre-bent to an angle and loaded into the narrow bore of the outer
cannula, the bore forcing the bend angle to open somewhat resulting in a spring loaded
condition. Once inserted into the bore, the cutting tip edge and the apex at the bend of
the pre-bent cutter are in contact with opposing surfaces of the bore of the outer cutter.
During reciprocation, the spring loaded cutting tip frictionally travels up and down the
bore seeking at all times to return to its unloaded original angle condition.

Miller's devices, including the alleged prior art Danek Diskecter, operate on a
different principle. Indeed, at the Rule 30(b)(6) deposition of Promex, Miller's own
testimony about the alleged prior art Diskecter confirms that its prior art cutting tip was
not pre-bent sufficiently, if pre-bent at all, to exert a spring force on the outer cannula.

Q:    Danek cutters, when they hit the nucleus pulposa, would the
contact between the nucleus pulposa and the tip of the inner cannula cause
that tip to bend further?

A:    Yes. It will cause it to bend.

Q:    Now, that's because there's resistance by the nucleus pulposa?

A:    Yes.

[Depo of Promex, Mike Miller designee, **Ex. 4**, 41:17-25]

This testimony confirms that the Diskecter was never spring loaded at all since frontal resistance is needed to cause Miller's cutting tip to bend. By virtue of being able to bend further *as a result of encountering tissue*, the cutting tip of the alleged prior art Diskecter and its miniature, the Noetix "Vit Commander" device, could not have been pre-bent to such an extent to exert a spring force on the outer cannula. Unlike the Miller device, a cutting tip of the patents-in-suit simply does not require any obstruction to bend further. Indeed, it is the absence of obstruction that provides freedom for the pre-bent cannula of the invention to bend further.

Based on the Miller testimony and teachings of maintaining a clearance, and away from a pre-bent tip that would exert a spring force, neither the Miller patent, the Diskecter, nor the Noetix "Vit Commander" is available to be used as references to prove anticipation or obviousness. Accordingly, none of these devices or references were any more material to patentability than the Miller patent which was disclosed. Indeed, the Diskecter and Noetix device were merely cumulative of the Miller patent and thus of no moment in an inequitable conduct analysis. Accordingly, Bausch's allegations about withholding knowledge about the Noetix device are nothing more than inconsequential smoke.

# REDACTED

10

**REDACTED**

In yet another example of Bausch's own evidence contradicting its assertions, after the Scieran/Noetix breakup, Promex continued its development effort of its vitrectomy system while it was negotiating with Storz.  In March 1996, Promex filed a "510K" application with the Food and Drug Administration seeking approval to allow it to market the device.  In those application materials, Promex disclosed its vitrectomy cutter which depicted a reciprocating straight inner cutter.  That cutter too showed no pre-bent tip.

Adding insult to injury, on June 11, 1996, Promex submitted a correction of its

---
3

**REDACTED**

11

510K submission for this cutter to the FDA stating that the tip of the high speed vitrectomy cutter generated *no heat* at maximum blade speed of 2,000 reciprocations per minute as measured during usage without use of any irrigating solution. [Promex doc. no. 052185, **Ex. 8**] Had the cutting tip truly been pre-bent sufficiently to exert a spring force on the outer cannula, the metal on metal friction between the inner and outer cannulas at that speed would certainly have generated heat.

In additional allegations, Bausch complains that Scieran failed to disclose the entire Danek Diskecter brochure. [Entire Danek brochure, **Ex. 9**] This is troubling since page 2 of the '111 patent shows that the entire brochure was not only disclosed, it was considered by the Examiner. [See third entry under "Other Publications" of '111 patent, **Ex. 1**, pg. 2]

In an abundance of caution, Scieran also specifically and separately disclosed the second page of the Danek Diskecter brochure which depicts the Diskecter system including the inner and outer cannulae and notation of Miller's "hinge design." [See fourth entry under "Other Publications" listed on page 3 of the '111 patent, **Ex. 1**, pg. 3] The disclosed second page was the most relevant, if relevant at all, respecting the prosecution of the patents-in-suit. The Danek brochure page, like the rest of the brochure, if even material, was simply cumulative and therefore not material to patentability, absence of disclosure of a copyright date on the second page, notwithstanding. Indeed Bausch admits that the August 1997 fax header date of the disclosed second page showed that it was art prior to October 3, 1997, the date Scieran's continuation-in-part application[4] was filed that ripened into the '111 patent. Accordingly, any argument that information about the Diskecter was withheld must fail.

---

[4]    It should be noted that the Related U.S. Application Data shown on the face page of the '111 patent is in error. The application for the '111 patent was a continuation of application no. 08/943,485 filed on Oct. 3, 1997. For clarification, see same section of the '986 patent. [**Ex. 2**]

Thus, based on the evidence in the public record and the Rule 30(b)(6) testimony of Promex by Mr. Miller[5], the Scieran cutter was not derived[6] from any Promex or Noetix vitrectomy device. Accordingly, the facts alleged by Bausch in paragraphs 27 - 30 of Bausch's proposed Amended Answer are wrong, completely unsupported, and are irrelevant to its claim of inequitable conduct.

## Bausch Seeks The Court's Assistance To Allow Leave To Continue To Allege Its False and Completely Unsupported Allegations

Bausch's allegations are not only false and completely unsupported, Bausch's alleged "facts" are not even new. They did not arise, according to Bausch's motion, from the recent Rule 30(b)(6) depositions of Scieran. For example, Bausch did not adduce any facts, other than sworn denials, that Scieran had seen or known of the details of the Noetix inner cutter. But Bausch knew through Promex since before the lawsuit was filed, that Noetix had temporarily given Scieran used prototypes of the Noetix device after they were tested in 1995 by doctors on subjects. Bausch's interrogatory answer even states this. "Dr. Schechter gave prototypes of the Vit Commander cutter to Mr. Ross to assist with Scieran's marketing efforts." [Bausch's Answer to Scieran Rogg., **Ex. 5**, pg. 9, lns. 4-5] (As discussed above, this is more of the same "so what.")

Through Promex, Bausch has known for years that Scieran was involved in promoting and marketing the Noetix device in 1995. Moreover, Scieran produced voluminous documents to Bausch including file histories of the patents-in-suit in April

---

[5]     Mr. Miller continues to retain a 40% ownership interest in Promex

[6]     It is ironic that Bausch alleges that Scieran obtained some information about the structure of the Diskecter and the Noetix cutter that Bausch alleges included a pre-bent tip since 1994. But despite Scieran's requests in discovery, including document requests and interrogatories, Bausch has utterly failed to produce any evidence that either device included this feature before Scieran's invention.

2005 as well as the documents Bausch now charges Scieran with intentionally withholding from the PTO. And Bausch has had public access[7] to both file histories since at least as early as this lawsuit was filed. Bausch has simply not been diligent. Indeed, the instant motion is untimely.

In paragraph 31 of its proposed Amended Answer, Bausch alleges that "Scieran claims to have developed a vitrectomy cutter (which it also called the 'Vit Commander') in late 1995 that had the same cutter structure as Noetix's prototype." These allegations, like others Bausch makes in its Amended Answer and motion, are not only conclusory, as shown above, they are also unsupported and completely false. Scieran has never made such a claim regarding its own device. Similarly, Bausch fails to mention that the alleged quotation in paragraph 30 of Bausch's Amended Answer was from an earlier Scieran business plan where the title had been updated but much of the content had not been. Scieran inventor Chris Boore testified that the October 1995 Private Placement Memorandum ("business plan") was only a working *draft* that had old information in it from previous versions of Scieran's business plans when Scieran had been marketing the Noetix device. [Depo. Chris Boore, **Ex. 10**, 86:5-89:8] This draft was not released.

By alleging unsupported conclusions and innuendo, Bausch attempts to add counterclaims and defenses that charge fraud. This opposition shows that what Bausch relies on are not facts at all. Bausch simply has no evidence to support its allegations of inequitable conduct which is why it elected not to attach any exhibits to its proposed Amended Answer.

"What the rule (9(b)) seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context

---

[7]        The complete file history of the '111 patent was also publicly and reasonably available to Bausch since at least as early as Scieran's letter threatening infringement, dated August 30, 2001.

14

of the document, it would be clear that the statement was not fraudulent." *In re Burlington Coat Factory*, 114 F.3d at 1426 n4. "Here, counsel for the Plaintiffs admitted to the District Court that they had in their possession all of the documents on which they relied, and yet made the 'strategic decision' not to plead additional details of the documents, or to attach them or quote from them." *Klein v. Autek Corp.*, 2005 U.S. App. LEXIS 19155 (3d Cir. 2005) (unpublished) (motion to amend denied for second time). [**Ex. 11**] Here, Bausch omits the full context of documents and misrepresents when the alleged facts first came to their attention.

This opposition exposes Bausch's motion for what it is - an improper attempt to interject and pollute the case with fraud in the event the case makes it to the jury. "[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague." *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988). "'Inequitable conduct' is not, or should not be, a magic incantation to be asserted against every patentee." *FMC Corp.*, 835 F.2d at 1415. "Nor is that allegation established upon a mere showing that art or information having some degree of materiality was not disclosed." *Id.* Bausch should not be allowed to infect this case with charges of fraud based on totally unsupportable allegations. Indeed, in addition to lack of diligence, improper motive should also be considered as grounds to deny leave.

Additionally, interjecting such a defense would prejudice Sciecan making trial significantly longer by having to defend these charges in court with at least the evidence put forth here. *Dal-Tile Corp. v. United States*, 23 C.I.T. 631, 638-639 (Ct. Int'l Trade 1999) (motion for leave to add defenses including unclean hands denied - "far more complicated and lengthy for the plaintiff, the added time and expense that would have to be incurred countering those new claims is also an appropriate prejudicial basis for denying a motion to amend" - and referring to "6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1487, at 623-26 (2nd Ed. 1990)".

It gets worse for Bausch. It is true that inequitable conduct may be committed by

15

the patentee and/or his attorney. However, "[t]o be guilty of inequitable conduct, one must have intended to act inequitably." *FMC Corp.*, 835 F.2d at 1415.

In paragraph 33 of its proposed Amended Answer, Bausch alleges inequitable conduct based on the 1993 article entitled "The Metamorphosis of Vitrectomy Cutters" which Bausch describes as including a vitrectomy device called the Ocutome. The article was produced by Scieran in good faith on April 7, 2005. The only further thing Bausch found out about it at Scieran's Rule 30(b)(6) depositions was that no one at Scieran is aware that it was even read and no one there knew when it had come into Scieran's possession. Indeed, Scieran's president, Mr. Rod Ross, testified that he was unaware of when it came into his files. "When I found it in my files, I didn't even recall having it." Indeed, he didn't even remember ever reading it. "I don't even know if I read any of this." [Depo. Rod Ross, **Ex. 12**, 127:12-15]

Lack of awareness, however, is insufficient scienter in an inequitable conduct analysis. *FMC Corp.*, 835 F.2d at 1415; *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988), cert. denied, *Hollister, Inc. v. Kingsdown Medical Consultants, Ltd.*, 490 U.S. 1067 (1989) (Kingsdown's attorney testified that he was not aware of error – district court's finding of gross negligence reversed – mere unawareness or negligence cannot be basis for a finding of intent especially in light of burden of clear and convincing evidence.) Without awareness, no intent can be found. Accordingly, there can be no finding of intent here.

Bausch also avers that the same article depicts and describes the Ocutome device as having a bent inner cutter which creates a spring force. According to Bausch's interrogatory answer to Scieran's interrogatory no. 8, dated May 6, 2005, U.S. Patent No. 5,019,035 to Missirlian also "discloses a pre-bent inner sleeve that exerts a spring force against the inside of the outer sleeve." Scieran disclosed Missirlian in good faith to the PTO.

On page 14 of that answer, Bausch specifically quotes from the Missirlian

16

specification:

> The cutting probe assembly 42 provides for efficient and clean cutting
> action while substantially minimizing or avoiding pulling or tearing on the
> drawn-in vitreous material. Towards the foregoing ends, the inner cutting
> member 44 has a distal end portion 78 which is bent at a critical angle
> relative to its longitudinal axis 80 so that the cutting edge 44a is preferably
> engaged with respect to the inner walls 82 adjacent the cutting edge 48a of
> the outer cutting member 46, but can also be slightly spaced therefrom.
> The inclined distal end portion 78 is provided with a resilient or spring-
> like property which facilitates maintaining the cutting edge 44a in a proper
> cutting orientation relative to the cutting edge 48a. (col. 4, lns. 40-53).
> [Bausch's Rogg Answer, dated May, 5, 2005, **Ex. 5**, pg. 14]

The face page of '986 patent shows that the Examiner considered U.S. Patent No.
5,019,035 to Missirlian. ['986 patent, **Ex. 2**] Therefore, accepting Bausch's allegations
and interrogatories as true, the allegedly offending portion of the 1993 article is
cumulative of what had been previously disclosed by Scieran and considered by the
Examiner. Accordingly, the 1993 article also fails the test for materiality. "[A] patentee
has no obligation to disclose an otherwise material reference if the reference is
cumulative or less material than those already before the examiner." *Halliburton Co.*,
925 F.2d at 1440.

In paragraph 34 of its proposed Amended Answer, Bausch alleges that Scieran
failed to disclose test results of the Storz MicroVit. According to Bausch's motion,
testing by Scieran of the MicroVit actually reported that "its flared inner cutter exerted a
spring force on the outer cutter." Bausch again misrepresents.

In making this allegation, Bausch is relying on nothing more than a letter to Rod
Ross, dated May 13, 1997, that included one page of test results from Scieran's cannula
vendor Hart Enterprises, Inc.. It was produced by Scieran in good faith on April 7, 2005.

17

[Hart Ltr, **Ex. 13**, Scieran waives confidentiality on this document.] The test results indicate testing of Storz' cutter assemblies by Hart, the inner cutters of which Hart characterized as very different compared to the Scieran device. The test results discuss that the Storz device has a flared end being forced into and out of the port of the outer cutter. Bausch, however, is grossly mistaken about its conclusion. Indeed, nowhere is a spring force disclosed. Bausch simply leaps irrationally to conclude that such flaring and operation in and out of the port equates with a spring force. This could be a number of things, including the inner cannula bouncing around in the outer cannula. If anything, the results disclosed just the opposite of a spring. Indeed, the results reveal that the MicroVit device was not pliant, but quite rigid since the report did disclose that a Storz inner cutter deformed the outer cannula. Additionally, while a longitudinal slit made at the end of the inner cutter was disclosed, it was not a circumferential slit or bend about a slit that was disclosed. And the '111 patent shows that Scieran in good faith disclosed at least five publications of Storz devices. [See publications directly following the "JCERS" references to the Diskector, **Ex. 1**, pgs. 2,3]

And Bausch does not hesitate to leap again. It concludes that Scieran actually made the same illogical leap to conclude that a spring force existed based on the reported results. Bausch then brazenly attempts to stick its own illogic to Scieran and charges that Scieran committed inequitable conduct by not disclosing Bausch's "gum" to the PTO.

The evidence shows that Scieran rightly never believed that the test results disclosed a spring force. Scieran never made the illogical leaps Bausch attempts to press onto it. At the Rule 30(b)(6) deposition of Scieran, Mr. Ross testified that he did not conclude, despite repeated attempts by Bausch's counsel to elicit testimony otherwise, that a spring force was disclosed by the test results. Mr. Ross testified correctly that no spring force was disclosed. [Depo Rod Ross, **Ex. 12**, 107:9 - 111:5] Accordingly, these reported results fail to show materiality, and Mr. Ross' testimony confirms the total lack of any intent to deceive. *Kingsdown*, 863 F.2d at 872; *Regents of Univ. of Cal.*, 119 F.3d

18

at 1574-1575.

But Bausch doesn't stop there. In the same paragraph, Bausch accuses Scieran's patent prosecuting attorney, Mr. Ben Yorks, of arguing (and he properly did so) to overcome a rejection that the Storz MicroVit did not disclose a spring force. First, Bausch has no evidence that Mr. Yorks made the same illogical leaps Bausch attempts to adhere to Scieran. Secondly, Bausch and its current counsel know that argument to distinguish in good faith is not improper. *Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 209 F. Supp. 2d 348, 402 (D. Del. 2002) (defense of inequitable conduct asserted on grounds of argument to distinguish references denied - Bausch held to be infringer of contact lens patent); see also *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1482 (Fed. Cir. 1986) ("mere fact that Du Pont attempted to distinguish the Blades process from the prior art does not constitute a material omission or misrepresentation"). Here, Bausch's allegations are without any basis in fact. Indeed, the Examiner too believed too that there was no spring force disclosed by the Storz device.

In addition to Missirlian, Scieran also disclosed during prosecution U.S. Patent No. 5,050,204 to Lawson which, according to Bausch's interrogatory answer, dated May 5, 2005, is among many patents that disclose a flared inner cutter that cause an "outward radial force from the inner needle end 21 on the outer needle inner diameter." [Bausch's Rogg Answer, dated May, 5, 2005, **Ex. 5**, pg. 13.] Accordingly, if this portion of Bausch's sworn answer is true, in the light most favorable to Bausch, the test results are at a minimum cumulative and therefore immaterial to an inequitable conduct analysis. *Regents of Univ. of Cal.*, 119 F.3d at 1574-1575; *Halliburton*, 925 F.2d at 1440.

In paragraph 31 of its proposed Amended Answer, Bausch alleges another doozy. Namely, that one of the inventors, Mr. Greggory Hughes knew to pre-bend the cutting tip so that it would come into contact with the outer cutter and then did not tell the PTO about it. Bausch attempts to construe non-disclosure of such knowledge as inequitable conduct. This is another "so what." An inventor is not required to disclose his

conclusions. Rather, an inventor is required to disclose prior art documents if material to patentability. Here, Bausch does not identify any documents nor does it even allege that Mr. Hughes withheld any. Bausch's allegations fail on their face.

To be sure, based on Bausch's interrogatory answer, Bausch has sworn that the idea of pre-bending a cutter tip to close the gap between the cannulae was no secret. As discussed above, Bausch asserted in its interrogatory answer that a number of prior art publications that Scieran disclosed to the PTO included this feature, including patents to Missirlian, to Lawson and U.S. Patent No. 3,815,064 to O'Malley. Additionally, Scieran disclosed U.S. Patent No. 4,210,146 to Banko a patent issued in 1980 that describes a pre-bent tip to achieve close shearing action. Of course, these were considered by the Examiner too. Even if Mr. Hughes had withheld the accused information, failure to disclose that which had already been disclosed cannot constitute inequitable conduct. *Halliburton*, 925 F.2d at 1440.

As the many patents in this crowded field make abundantly clear, over the decades, there have been a great many attempts to solve the problem of obtaining close shearing action in guillotine cutters. However, it was not the identification of the problem that was novel, it was Scieran's particular solution to the problem, as set forth in the asserted claims, which was new and warranted patent protection. Indeed, "apparatus claims cover what a device *is*, not what a device *does*." *Hewlett-Packard Co. v. Bausch & Lomb*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) (emphasis in original) (judgment of patent infringement against Bausch on X-Y printer plotter affirmed).

In paragraph 32 of its proposed Amended Answer, Bausch alleges that Scieran was promoting the Vit Commander to doctors and others throughout the summer of 1996. From Bausch's allegations, it is not clear what "promotion" Bausch is referring to. Bausch identifies no documents or prior art and thus Bausch lacks the required precision required by Rule 9(b). *EMC Corp.*, 921 F. Supp. at 1263. The Federal Circuit has held that "a determination of 'inequitable conduct' may not be based on inferences." *EMC*

*Corp.*, 835 F.2d at 1417 n.11.

If what Bausch is alluding to is a promotional announcement inviting doctors to come see generally a Vit Commander system at a late-October 1996 trade show as testified to at Mr. Ross' deposition, there was nothing wrong with this activity, even if information about it was withheld from the PTO. *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1048-1052 (Fed. Cir. 2001) (holding of on-sale bar for "blitzkrieg" of pre-sale promotional activity reversed). Of course, here, due to Bausch's lack of particularity, Scieran is just guessing at what promotional activity Bausch is referring to. Its motion should not be allowed to rest on such vagueness and inference.

It is true that Mr. Ross testified that he destroyed documents. He did so to save costs of storage space in moves from his office to his garage at home. But none of the documents he destroyed were of any practical or relevant value to this case. Bausch has not pointed to any document that Scieran should have kept, but had disposed of. Mr. Ross did testify that he did not know whether he kept a copy of Scieran's 510K application which sought approval from the FDA to market Scieran's Vit Commander® system. He testified that he believed it was not important because Scieran had not been selling the system since 2001 and if someone actually needed a copy, that the FDA would have one[8]. Bausch simply speculates that the Scieran intentionally destroyed documents that were "valuable" or "highly relevant," but it has no evidence that any of the destroyed documents were even relevant at all. Indeed, Mr. Ross made great efforts to maintain and produce documents he believed were relevant to this case. To the best of his recall, Mr. Ross kept and produced all documents related to the patents-in-suit and the development of the Vit Commander. [Depo. Rod Ross, **Ex. 12**, 25:12-22] Had it not been for his concern about such preservation, he would have disposed of them all. Mr. Ross' efforts to preserve documents cannot amount to intent to destroy or withhold them. And if he had

---

[8]     Scieran has never received notice that Bausch subpoenaed the FDA or that Scieran's consent was required for it to do so.

no preservation concern and destroyed all documents in his garage, his negligence would not even be culpable. *Kingsdown*, 863 F.2d at 872. Bausch also has lacks any evidence of any concealment. Here, Bausch wrongly assumes that if someone dumps a wastebasket of irrelevant material that it is entitled to complain that inequitable conduct has been committed. Bausch needs more than this. Under the case law, Bausch is not allowed to premise an accusation of inequitable conduct on such conclusory assumptions and lack of specificity. *EMC Corp.*, 921 F. Supp. at 1263; *Ferguson Beauregard*, 350 F.3d at 1344.

The close of fact discovery on October 28, 2005, is almost upon us. The time for requesting more documents, however, has long since passed pursuant to the Court's Scheduling Order. [D.I. 17] Moreover, having taken its depositions of Scieran, including the three relevant inventors of the patents-in-suit and its prosecuting patent attorney, Bausch will not have opportunity for garnering additional facts to support these proposed defenses. As of the writing of this opposition, there are three depositions pending, two by Scieran and only one by Bausch. Bausch has only expressed interest in taking the deposition of a former Promex manufacturing engineer presumably in efforts to elicit his testimony about manufacturing of the Diskecter. No one expects any evidence of any inequitable conduct by Scieran to surface from this witness. Accordingly, as to Bausch's proposed defenses, discovery has been completed.

Moreover, even if true, the facts as alleged by Bausch cannot support the relief it requests or support opposition to an inevitable motion for summary judgment should the instant motion be granted. Accordingly, the instant motion seeking leave to add the defense of inequitable conduct is futile and Scieran would be prejudiced if such a defense were allowed to proceed. Bausch's motion for leave to add inequitable conduct as a defense should be denied. Bausch's counterclaim for unenforceability is based entirely on the same allegations and therefore Bausch's motion for leave to add it should also be denied.

## Bausch's Proposed Unclean Hands Defense Relies on the Same Unsupported and Vague Allegations And Should Also Not Be Allowed

In alleging unclean hands, Bausch relies entirely on the same baseless and vague allegations of its charges of inequitable conduct. Like inequitable conduct, the allegation of unclean hands also requires specificity in pleading. The "defense of unclean hands involved elements of fraud and explained that 'the standards of pleading should be identical.'" *Intel Corp. v. Hyundai Electronics America, Inc.*, 692 F. Supp. 1113, 1117 (D. Cal. 1987) (striking unclean hands defense for failure to plead with the specificity required under Rule 9(b) and citing *Northern Engineering & Plastics Corp v. Blackhawk Molding Co., Inc.*, 205 U.S.P.Q. (BNA) 609, 610 (N.D. Ill. 1979)). The Federal Circuit has warned that unclean hands cannot render a patent unenforceable without proof of materiality. *Regents of Univ. of Cal.*, 119 F.3d at 1571.

Moreover, Bausch fails to plead any unclean conduct beyond those it alleges constitute inequitable conduct. If it intends to rely on other facts, it has not provided notice of them or plead them with sufficient specificity. Allegations of unclean hands must be very closely connected to the equity that Scieran is seeking – a permanent injunction. As the Third Circuit and the U.S. Supreme Court have emphasized, the nexus must be extremely close. "Only when 'some unconscionable act of one coming for relief has immediate and necessary relation to the equity that' the party seeks, will the doctrine bar recovery." *New Valley Corp. v. Corporate Prop. Assocs. 2 & 3 (In re New Valley Corp.)*, 181 F.3d 517, 525-26 (3d Cir. 1999) (citing to *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933) and other cases denying unclean hands defense for lack of a sufficient nexus) (court reversed – "no immediate and necessary relationship between New Valley's assertion of unclean hands and CPA's claims"). "The precedents that we find controlling make clear that there must be a relationship between the inequitable conduct and the claims brought before the court in order for the doctrine to

23

apply; even then, the court has discretion to limit the reach of the doctrine to only some of the claims." *New Valley Corp.*, 181 F.3d at 525. As its allegations of inequitable conduct are insufficient and baseless, its allegations of unclean hands must also fail. Accordingly, the defense of unclean hands should not be allowed.

### Bausch's Proposed Laches Defense Is Defective On Its Face and Relies on Unsupported and Vague Allegations And Should Also Not Be Allowed

To successfully invoke laches, a defendant must prove by a preponderance of the evidence (1) that the plaintiff delayed filing suit an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant; and (2) the delay resulted in material prejudice or injury to the defendant. *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993).

"While an affirmative defense need only be a brief statement, see Form 20 following Fed.R.Civ.P., it must provide (plaintiff) with adequate notice of the relevant elements." *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 738 (D. Ill. 1982). Bausch's allegations of laches, however, fall far short of what is required. Indeed, Bausch has failed to allege, even at this late stage, that Scieran's delay in filing suit was "unreasonable and inexcusable." Bausch did not do so because it recognizes that Scieran's delay was, in fact, not unreasonable or inexcusable.

As to delay, the first of the two elements required for laches, "the period does not begin prior to issuance of the patent." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992). If successful, the laches defense bars relief only for damages accrued prior to suit. *Id.* at 1040-41. Bausch has not alleged any laches violation regarding the '986 patent. However, "[w]here there is evidence of other factors which would make it inequitable to recognize the defense despite undue delay and prejudice, the defense may be denied." *Id.* at 1036.

24

The '111 patent, of which Scieran has asserted only Claim 3, was issued on July 10, 2001. Scieran's first warning letter of actual infringement was sent by a non-intellectual property law firm to Bausch's World Headquarters on August 30, 2001, asking Bausch if it had an interest in obtaining rights to the patent and that it was also seeking interest from others. Scieran's counsel at that time had also included pending claims of the application that ripened into the '986 patent which was issued on Oct. 7, 2003. During this time, Scieran was down to only one employee, its president, Mr. Rod Ross, who was soliciting the sale of Scieran and the '111 patent while actively managing other companies. At this same time, Scieran was also actively seeking litigation counsel should filing suit become necessary. Having not heard from Bausch's World Headquarters, Scieran's patent prosecutor, Mr. Ben Yorks, sent a warning letter to Bausch & Lomb Vision Care on May 3, 2003.

Throughout this time, and having not heard from Bausch, Scieran continued to await the issuance of the '986 patent so that it could be included in a complaint. Scieran has, in fact, asserted four claims (1-4) of the '986 patent in this lawsuit which have been and are continuing to be infringed by Bausch's accused vitrectomy devices.

Scieran did manage to locate General Patent Corporation International ("GPCI") and engaged the assistance of attorney, Mr. Paul Lerner, Esq., Vice President and General Counsel of GPCI. On Scieran's behalf, Mr. Lerner wrote to Bausch on March 17, 2004, and invited Bausch to closely examine the inner cannula of Bausch's high speed vitrectomy cutter in view of both patents-in-suit and offered Bausch a license. Bausch turned to Promex, its admitted sole supplier of the accused devices. On April 19, 2004, GPCI received a letter from Ms. Deborah Beck, Promex' Vice President and General Counsel, informing GPCI that it was investigating the matter on Bausch's behalf. Thereafter, correspondence between Mr. Lerner and Ms. Beck ensued which finally resulted in a letter from Ms. Beck stating that Promex, and thus Bausch, believed that both patents were invalid. Having finally understood Bausch's position that licensing

avenues were closed, this suit was filed on September 30, 2004.  At its deposition on June 30, 2005, a Rule 30(b)(6) witness for Promex admitted that it is still selling the accused products to Bausch.

As part of its motion regarding laches, but absent from its proposed Amended Answer, Bausch asserts that it bases its proposed laches defense on Scieran's destruction of documents "highly relevant to the validity of the patents."  (Mtn, para. 13)  To the extent that such allegations are even relevant[9] to the proposed defense of laches, as set forth above, Mr. Ross never testified to such destruction.  Indeed, his testimony indicates he was unaware of any relevant, let alone highly relevant, documents that were destroyed. In addition to lacking sufficient specificity, this allegation too lacks any basis in fact.

In the same paragraph of its motion, Bausch then asserts that Mr. Ross "*apparently* destroyed Scieran documents showing its dealings with Noetix, its knowledge of the Diskecter and its early promotional efforts."  (Emphasis added.)  This assertion, although not in the pleading, also lacks adequate particularity.  By using the word "apparent," it becomes obvious that Bausch has no basis in fact, but is merely speculating.

The "apparent," albeit overly broad and vague, examples of destruction that Bausch alleges were discussed above.  Indeed, all of Scieran's "dealings with Noetix," including related documents, have been readily available to Bausch from its supplier Promex since at least as early as Ms. Beck's letter dated April 19, 2004.

As also discussed above, Scieran's alleged destruction of documents regarding its "knowledge of the Diskecter" is a non-starter.  Even had Scieran obtained detailed information about the Diskecter or its miniaturized version, the Noetix cutter, it is much

---

[9]     So as to increase its chances of getting its baseless charges of "destruction of evidence" before a jury, Bausch attempts to shoehorn these allegations into this proposed defense too.  Bausch's allegations here are even more generalized and therefore also suffer from lack of adequate particularity.  Given this Court's order prohibiting motions in limine, such baseless charges should be precluded now. [D.I. 24]

ado about nothing. According to Bausch, the Diskecter was publicly known by way of at least the 1994 brochure and its 1994 sales. Importantly, and as shown above, Bausch's own evidence shows that neither device had an inner cannula that included a pre-bent tip so as to exert a spring force on the outer cannula. And Scieran disclosed Miller's '849 patent to the PTO which Bausch's own witnesses and documents prove that is what is embodied by the Diskecter and the Noetix device. In other words, if destruction of such documents had even occurred, which it did not, it would have been immaterial and therefore not relevant.

In good faith, Scieran has produced a great number of documents regarding its promotional efforts including its business plans before and after the breakup with Noetix. Scieran testified too that it produced all documents regarding the development of the Scieran cutter. Indeed, Scieran produced drawings dated as early as December 1996 showing Scieran's pre-bent cutter tip. Apparently according to Bausch, all information about Scieran was required to be saved on pain of charges of inequitable conduct.

As discussed above, Bausch simply has no facts to support materiality or intent to deceive. If what Bausch is alluding to is a derivation from Promex of some element of its device, the Federal Circuit has held that even inclusion of known prior art into claims is not inequitable. *Halliburton*, 925 F.2d at 1442 (holding of inequitable conduct reversed).

Bausch has also failed to allege the second necessary element of the defense of laches, that "the delay resulted in material prejudice or injury" to it. Bausch has failed to do so because it can show none. Indeed, based on the fact that Bausch has continued to sell the accused devices even after it has been sued on both issued patents-in-suit, it does not appear that Bausch, an experienced infringer, would have changed its course had it been sued on only the '111 patent. *Meyers v. Asics*, 974 F.2d 1304, 1307-08 (Fed. Cir. 1992) (rejecting the defendants' claim of economic prejudice because "the evidence shows that none of the defendants was concerned that its products might infringe Meyers' patents, and does not show that any of the defendants would have acted differently had

27

Meyers sued earlier"). To be sure, the present suit has not stopped Bausch from marketing or selling the accused devices. In other words, Bausch did not suffer any economic prejudice due to any delay by Scieran. *Fleet Bus. Credit Corp. v. National City Leasing Corp.*, 191 F.R.D. 568, 569 (D. Ill. 1999) (motion to strike laches defense granted for failure to plead necessary element).

Additionally, Bausch has alleged all along that Promex was first to invent the patented device. In its answer to Scieran's Interrogatory No. 6, Bausch states that Promex is its sole supplier of the accused cutter tips CX4804 and CX5825. [Bausch Rogg Answer dated May 6, 2005, **Ex. 5**, pg. 5] In its answer to Scieran's Interrogatory No. 2, Bausch states that it had began selling the CX4804 cutter in 1998 and the CX5825 cutter in 2002. [Bausch Rogg Answer dated May 6, 2005, **Ex. 5**, pg. 3] Bausch admits that it did not manufacture the device, but it was developed by Promex. Its development costs set forth in the May 1997 Promex/Storz development agreement had already been paid out before being accused of infringement. Had Bausch desired to simply discontinue its sales of the accused devices, it could do so very quickly and without any injury. Accordingly, Bausch has good reason not to allege prejudice from delay, it simply did not suffer any. Accordingly, its laches defense should not be allowed.

Moreover, Bausch has long known about the interval between the filing of suit and Scieran's letter charging infringement since at least as early as its initial answer in November. There is no excuse for its delay in seeking to bring this defense now. Indeed, it had multiple opportunities to plead the defense in each of its answers and failed to do so. Having failed to allege the elements of the defense, and having waited too long to bring it, equity warrants that it not be allowed now.

## Bausch's Motion To Add Asserted Counterclaim of Invalidity Cites No Grounds and Violates Rule 13(a) and Should Not Be Allowed

Grounds for motions seeking an order shall be plead with "particularity." Rule

7(b) of Fed. R. Civ. Proc.. Although it relies upon Rule 15(a) generally, Bausch fails to indicate any particular grounds or basis upon which it seeks to now add its proposed counterclaim of invalidity.  Bausch's motion seeking an order to allow it to add this counterclaim lacks the particularity required for it do so.

Rule 13(a) of Fed. R. Civ. Proc. provides that a "pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ."  On both occasions that Bausch was served with operative pleadings, namely Scieran's Complaint and Scieran's First Amended Complaint, Bausch failed to assert a counterclaim for invalidity.  Bausch did assert a defense of invalidity and thus was fully aware of the facts that arose out of the transaction or occurrence of Scieran's claims for patent infringement (in both complaints).  Bausch, however, did not timely cure its deficiencies and thus leave to amend to include this counterclaim should now be denied.

## CONCLUSION

Bausch's motion for leave to file what amounts to Bausch's third answer to include the proposed defenses and counterclaims is at least unsupported, untimely and futile and, if granted, would prejudice Scieran.  Scieran respectfully requests that Bausch's motion be denied.

Respectfully submitted.

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
Josy W. Ingersoll (#1088)
Adam W. Poff (#3990)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

(302) 571-6672
apoff@ycst.com

O'CONNOR CHRISTENSEN & McLAUGHLIN, LLP
Edward F. O'Connor, Esq.
Becky V. Christensen, Esq.
Craig McLaughlin, Esq.
1920 Main Street, Suite 150
Irvine, California 92614
(949) 851-5000
(949) 851-5051
cml@ocmiplaw.com
Attorneys for Scieran Technologies, Inc.

Dated: September __, 2005

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on September 28, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> Wilmington, DE  19801

I further certify that on September 28, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Adam W. Poff  (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
jingersoll@ycst.com

Attorneys for Scieran Technologies, Inc.

DB01:1593603.1