# EXHIBIT 10

1

```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE

SCIERAN TECHNOLOGIES, INC.,    )
                               )
          Plaintiff,           )
                               )  Civil Action
v.                             )  No. 04-1319 (SLR)
                               )
BAUSCH & LOMB, INCORPORATED,   )
                               )
                               )
          Defendant.           )
```

        Videotape deposition taken pursuant to Rule
30(b)(6) of JAMES CHRISTOPHER BOORE at the law offices of
Morris, Nichols, Arsht & Tunnell, 1201 North Market
Street, Wilmington, Delaware, beginning at 9:30 a.m., on
Friday, July 29, 2005, before Eleanor J. Schwandt,
Registered Merit Reporter and Notary Public.

APPEARANCES:

        CRAIG McLAUGHLIN, ESQ.
        O'CONNOR, CHRISTENSEN & McLAUGHLIN, LLP
           1920 Main Street - Suite 150
           Irvine, California  92614
           for the Plaintiff

        JACK B. BLUMENFELD, ESQ.
        LESLIE A. POLIZOTI, ESQ.
        MORRIS, NICHOLS, ARSHT & TUNNELL
           1201 North Market Street
           Wilmington, Delaware  19801
           for the Defendant


ALSO PRESENT:
        PAUL J. LERNER, GENERAL PATENT CORPORATION
        LINDSAY DuPHILY, Discovery Video Services
        RICHARD BAUER, Intern


                      WILCOX & FETZER
     1330 King Street - Wilmington, Delaware 19801
                      (302) 655-0477





WILCOX & FETZER LTD.
Registered Professional Reporters

```
 1                  JAMES CHRISTOPHER BOORE,
 2         the witness herein, having first been
 3         duly sworn on oath, was examined and
 4         testified as follows:
 5                        EXAMINATION
 6  BY MR. BLUMENFELD:
 7      Q.   Good morning, Mr. Boore.  How are you?
 8      A.   Good.
 9      Q.   Mr. Boore, where do you live?
10      A.   Poway, California.
11      Q.   What is your address there?
12      A.   13327 Bronco Way.
13      Q.   Is that in the Los Angeles area?
14      A.   No, San Diego area.
15      Q.   San Diego.  Where do you work?
16      A.   I am currently in a transition.  I am in between
17  jobs.  I have been doing fund raising for an organization
18  called the Legion of Christ, and I am entering a position
19  as a regional manager with Oasis Medical.
20      Q.   Have you had your deposition taken before?
21      A.   No.
22      Q.   Well, I'm going to be asking you some questions
23  today, and if there is anything you don't understand,
24  please let me know.  And if there is a time that you want
```



```
 1   to take a break, just let us know and we will take a
 2   break.
 3       A.   Great.
 4       Q.   Do you understand that you have been designated
 5   to testify as a Scieran witness with respect to three
 6   notices of deposition?
 7       A.   Yes.
 8       Q.   I'm going to be questioning you on the first two
 9   notices, and then later today Miss Polizoti is going to
10   be questioning you on the third notice. Probably won't
11   get to that until this afternoon.
12            Can you tell me a little bit about your
13   educational background, Mr. Boore?
14       A.   I have a Bachelors Degree in Business Management
15   from Long Beach State University in California.
16       Q.   When did you get that?
17       A.   Graduated in '76.
18       Q.   Do you have any other degrees?
19       A.   No.
20       Q.   After you graduated in 1976 what did you do?
21       A.   Started working in sales, started in the copier
22   business and then moved into medical sales.
23       Q.   How long were you in the copier business?
24       A.   Two years.
```



1  this is --
2      A.   Do you want this one back?
3      Q.   That's fine.
4      A.   The ordering or whatever.
5      Q.   Mr. Boore, what is Defendant's Exhibit 5?
6      A.   It appears to be a draft copy of a reworking of
7  our Private Placement Memorandum, but not a final, not a
8  final version.
9      Q.   What was your role in preparing this?
10     A.   I collaborated with Rod Ross in developing these
11 documents.
12     Q.   This was dated October 1995, right?
13     A.   Right.
14     Q.   And is that about the time that it was prepared?
15     A.   It is possible that it was around that time.
16 But, again, this was -- I can just tell by the different
17 mark-ups in it that this is a work in progress.
18     Q.   Now, you were talking in this about Scieran
19 developing the Vit Commander System, and on page 2 of the
20 document, right below the middle of the page, you wrote,
21 "The cutting and vacuum technology utilized in the Vit
22 Commander System will soon be added to this list of
23 significant technology advancements," do you see that?
24     A.   Mm-hmm.



1  Q. What was the Vit Commander System that you were
2  referring to?
3  A. Well, in October of -- and as I say, this is a
4  draft document, so there is a number of things that I
5  have read in here that I know that we changed and took
6  out of this document before it was finalized. But in
7  October we would have been talking about a newly
8  developed product from Scieran Technologies.
9  Q. The only product that you had had, or the only
10 prototype that you had had up to this time, in October of
11 1995, was the Noetix system, right?
12 A. It was the only one that we had tested.
13 Q. It is not the only one that you had tested, but
14 it was the only one that you had any contact with?
15 A. Physically, but not in terms of concept.
16 Q. Below, in the paragraph below what you just
17 looked at, in the middle of the paragraph it says, "With
18 a minor modification to the disposable cutter aspiration
19 port" --
20 A. I'm sorry, where are you reading again?
21 Q. Just below the paragraph on page 2 that you were
22 looking at, the next paragraph down.
23           MR. McLAUGHLIN: The first sentence, Jack?
24 Which sentence are you talking about?

1    Q.   "After Scieran," the paragraph beginning "After
2 Scieran," about six lines down or five lines down it
3 says, "With a minor modification to the disposable cutter
4 aspiration port, the Vit Commander System could prove to
5 be a viable cataract extraction device."  How did you
6 know that?
7    A.   It was just projection of possible concept.
8    Q.   What was the minor modification that would have
9 to be made?
10   A.   I don't know.  It is out of my area of expertise.
11   Q.   Can you turn to page 7, please.  If you go down
12 to the bottom of page 7, do you see the Danek paragraph
13 there?
14   A.   Mm-hmm.
15   Q.   And so in this paragraph you were still referring
16 to the Scieran system using the same high speed cutting
17 technology that Danek was using, right?
18   A.   That's in this particular draft.  But it is
19 something that wouldn't have gotten into anyone's,
20 anyone's hands.  Because, as I said, this was a draft
21 document that we were making changes to.
22   Q.   And as of October of 1995 you were still writing
23 documents showing that your or saying that your system
24 was going to use the same technology as the Danek system,

1  right?

2  A.  No.

3  Q.  You didn't write that in this document?

4  A.  No.  This was a, you know, word processor document that, you know, we did it, we changed the date on the front of it, so it still had words in it from previous versions that, as I said, this was a draft document that we were making changes to.

MR. BLUMENFELD:  Let's mark as Defendant's Exhibit 32 CB 118 to 177, Scieran Technologies Confidential Private Offering Memorandum from January 1997.

(Defendant's Deposition Exhibit 32 was marked for identification.)

MS. DuPHILY:  We are going off the record at approximately 1:32 p.m. to change tape.

(Brief recess taken.)

MS. DuPHILY:  We are back on the record at 1:35.

MR. BLUMENFELD:  What is the number on this?

MS. DuPHILY:  32.

BY MR. BLUMENFELD:

Q.  What is Defendant's Exhibit 32?

A.  It appears to be an offering memorandum for the