IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SCIERAN TECHNOLOGIES, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>BAUSCH & LOMB INCORPORATED, a New York corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Redacted Version - Publicly Filed**<br><br>Case No.: 04-1319 (SLR)<br><br>**CONFIDENTIAL**<br>**FILED UNDER SEAL** |

**PLAINTIFF SCIERAN TECHNOLOGIES, INC.'S OPPOSITION TO**
**DEFENDANT'S APPLICATION FOR IN CAMERA INSPECTION**

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
Josy W. Ingersoll (#1088)
Adam W. Poff (#3990)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6672
apoff@ycst.com

O'CONNOR CHRISTENSEN & McLAUGHLIN, LLP
Edward F. O'Connor, Esq.
Becky V. Christensen, Esq.
Craig McLaughlin, Esq.
1920 Main Street, Suite 150
Irvine, California 92614
(949) 851-5000
(949) 851-5051
cml@ocmiplaw.com
Attorneys for Scieran Technologies, Inc.

September 15, 2005

## INTRODUCTION

1.  Plaintiff SCIERAN TECHNOLOGIES, INC. ("Scieran"), hereby opposes the instant Application For In Camera Inspection served by Defendant BAUSCH & LOMB INCORPORATED ("Bausch") and requests that no order issue compelling production. In its motion Bausch seeks in camera inspection and production of a privileged e-mail that its counsel believes stated that "Dr. Schechter told him (Mr. Ross) about the structure of the Noetix prototype by showing him the Miller patent or patent application." As will be shown, this application too[1] is much ado about nothing.

2.  Pursuant to paragraph 17 of the entered Stipulated Protective Order [D.I. 43] attached herewith is the requested document for the Court's confidential in camera inspection. [Irell 147, **Ex. 1** hereto]

### The Attorney Client Privilege Applies and Has Not Been Waived

3.  "The traditional elements of the attorney client privilege that identify communications that may be protected from disclosure in discovery are: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994). The "district court erred in affirming the magistrate judge's

---

[1] Bausch concurrently served a Motion For Leave To File First Amended Answer To First Amended Complaint. For many of the same reasons that motion fails, so does its Application.

1

decision finding Rhone-Poulenc and Armour had waived the attorney client privilege by putting their state of mind in issue, and erred in denying the motions to quash the subpoenas served on the law firms." *Id.* at 866. There was no waiver here either.

4. According to the declaration of Mr. Paul J. Lerner, Esq., filed concurrently herewith, the document in question meets all these criteria for protection under the attorney client privilege. [Decl. Lerner, **Ex. 2** hereto] The document in question was created and sent from Mr. Rod Ross, president of Mr. Lerner's client, Scieran Technologies, Inc.. At the time, Mr. Lerner was a member of the state bars of New York and Illinois, and was acting in the capacity of a lawyer. The communication relates to a fact (the seeking of information to provide desired legal services in evaluating and responding to assertions made by Promex's counsel in pre-litigation communications including assertion of invalidity) of which Mr. Lerner was informed without the presence of strangers. (Mr. Greggory Hughes was a former employee and at all relevant times a consultant on such matters, and a co-inventor with a common interest in both enforcing the Scieran patents and maintaining their validity – see also paragraph no. 5 below). This communication was sent to Mr. Lerner for the purpose of securing primarily legal services and not for the purpose of committing a crime or tort. The privilege was promptly claimed on behalf of Scieran by Irell Manella, Scieran's patent prosecution attorneys, and has not been waived by inadvertent, albeit brief disclosure.

5. To the extent assertion of common interest is necessary to maintain the privilege, at his deposition in this action, Mr. Hughes testified that he was a co-inventor of the patents-in-suit, that he remains a principal of Scieran, that he is a shareholder of Scieran, and that he has a stake in the outcome of the litigation. Accordingly, he has a common interest. [Depo. Greg Hughes, **Ex. 3** hereto, 13:7-14:23.]

6. Since the document in question meets all the criteria for maintaining the confidentiality of the document and the attorney client privilege, it should not be disclosed since there was no waiver.

2

## The Document In Question Is Not Relevant

7. Here, the statement that Bausch seeks to have disclosed is simply not relevant to this case. Even if "Dr. Schechter told him (Mr. Ross) about the structure of the Noetix prototype by showing him the Miller patent or patent application" it is of no moment here. Bausch seeks disclosure of the statement because it believes that it will somehow show that Scieran knew that the Noetix inner cutter had a circumferential slit and thus committed inequitable conduct by intentionally withholding it from the PTO. Bausch is wholly mistaken because the conclusion it seeks to draw from this alleged earlier statement is irrelevant.

8. As in Bausch's concurrent Motion For Leave, its logic is greatly flawed here too. Even if Scieran had obtained knowledge of the structure of the Noetix cutter, such knowledge would not have been considered material in an analysis of inequitable conduct[2]. It is not material because, as the '111 patent shows, Scieran had disclosed the entire Miller patent to the PTO in good faith which, according to Bausch, shows an inner cutter with a circumferential slit. Any additional disclosure that it saw the Miller patent would thus have been cumulative. Indeed, "even where an applicant fails to disclose an otherwise material prior art reference, that failure will not support a finding of inequitable conduct if the reference is simply cumulative to other references." *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1574-75 (Fed. Cir. 1997) (holding of materiality and intent to deceive reversed). Accordingly, there can be no finding of inequitable conduct.

9. In addition to the Miller patent, Scieran also disclosed the Danek Diskecter brochure, which Bausch asserts in its interrogatory response, is the same as the

---

[2] So as to limit repetition, Scieran refers the Court to its extensive discussion of this conclusion and the bases therefore as contained in Scieran's Opposition to Bausch's Motion for Leave To File First Amended Answer To First Amended Complaint filed concurrently herewith.

3

Noetix cutter, but only larger in scale. In other words, according to Bausch, both devices also had slits as depicted in the Diskecter brochure. Accordingly, both were disclosed to the PTO and were considered. And the PTO determined that the Scieran invention was patentably distinct over the Diskecter brochure and the Miller patent.

10. The only intent of Scieran that can be concluded here is one of good faith. That Mr. Ross may have later remembered that it was a patent to Schecter that had been shared with him and not the Miller patent does not alter this analysis. Indeed, page 2 of the '111 patent shows that Scieran disclosed the patents to Schechter it believed could have been relevant to the prosecution, including U.S. Patent No. 5,403,276 that issued in April 1995.

11. However, if anything can be said about Bausch's application, one of Bausch's allegations is true. It is true that Scieran "tried to patent an inner cutter having a circumferential slit." Claim 3 of Scieran's '111 patent clearly discloses this. But this is another "so what." The Federal Circuit has held that even inclusion of prior art in claims is no violation. *Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1442 (Fed. Cir. 1991) (holding of inequitable conduct reversed). And this makes complete sense. Otherwise every element of every claim would be required to be novel. That has never been the law.

12. Even if the privileged document in question states what Bausch claims it states, the alleged statement is not relevant to the existing action, including any inequitable conduct analysis. Accordingly, for all the above reasons, the document in question should not be ordered produced.

Respectfully submitted.

_____
YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
Josy W. Ingersoll (#1088)
Adam W. Poff (#3990)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6672
apoff@ycst.com

O'CONNOR CHRISTENSEN & McLAUGHLIN, LLP
Edward F. O'Connor, Esq.
Becky V. Christensen, Esq.
Craig McLaughlin, Esq.
1920 Main Street, Suite 150
Irvine, California 92614
(949) 851-5000
(949) 851-5051
cml@ocmiplaw.com
Attorneys for Scieran Technologies, Inc.

Dated: September 15, 2005

# EXHIBIT 1

# EXHIBIT 1 REDACTED IN ITS ENTIRETY

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| SCIERAN TECHNOLOGIES, INC., a California corporation, | ) Case No.: 04-1319 (SLR) ) ) DECLARATION OF PAUL J. LERNER, |
| Plaintiff, | ) ESQ. IN SUPPORT OF PLAINTIFF ) SCIERAN TECHNOLOGIES, INC.'S |
| vs. | ) OPPOSITION TO DEFENDANT'S ) APPLICATION FOR IN CAMERA |
| BAUSCH & LOMB INCORPORATED, a New York corporation, | ) INSPECTION ) ) |
| Defendant. | ) ) ) |

DECLARATION OF PAUL J. LERNER

I, Paul J. Lerner, hereby declare that:

1. At all relevant times, I have been an attorney licensed to practice in the states of New York and Illinois. I am currently and have been an active member of those state bars since 1975.

2. In addition, I am Senior Vice President and General Counsel for General Patent Corporation International, a New York corporation.

3. In the above entitled action, in addition to outside counsel for both parties, I am also listed on the entered Stipulated Protective Order as an individual entitled to access confidential information exchanged between the parties. Only three others, all attorneys, are listed in the Order that have such access, two general counsels from Bausch & Lomb, and Mr. Michael Beck, outside counsel for non-party Promex Technologies, LLC ("Promex") supplier of the accused vitrectomy cutters.

4. Before present outside litigation counsel for Scieran had been engaged, I was acting in the capacity of an attorney for Scieran's. In that capacity, I had, for

example, exchanged correspondence with Bausch & Lomb and with Promex' Vice President and General Counsel, Ms. Deborah R. Beck, concerning Scieran's charge of infringement against Bausch & Lomb regarding the accused cutters supplied to it by Promex.

5. In a letter to me from Ms. Beck, dated June 22, 2004, she made assertions about the development of the Bausch & Lomb cutters and asserted that the Scieran patents were invalid.

6. The correspondence that Bausch & Lomb now seeks to have disclosed was an e-mail to me from Scieran's president, Mr. Rod Ross, dated July 9, 2004, concerning the assertions made in Ms. Beck's letter. The e-mail shows that it was copied only to fellow Scieran inventor Mr. Gregg Hughes.

7. Given the context and parties to the e-mail, I consider it to be subject to the attorney client privilege. Additionally, given the charge of infringement pending by Scieran at the time, I consider the e-mail to also be protected by the work product privilege.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 15, 2005 at Suffern, New York.

_____
Paul J. Lerner, Esq.

# EXHIBIT 3

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SCIERAN TECHNOLOGIES,    )
INC.,                    )
                         )
    Plaintiff,           )
                         )
    v.                   ) C.A. No. 04-1319 (SLR)
                         )
BAUSCH & LOMB,           )
INCORPORATED,            )
                         )
    Defendant.           )

       Videotape deposition of GREGGORY W. HUGHES taken pursuant to notice at the law offices of Morris Nichols Arsht & Tunnell, 1201 North Market Street, 18th Floor, Wilmington, Delaware, beginning at 9:40 a.m., on Thursday, July 28, 2005, before Kimberly A. Hurley, Registered Merit Reporter and Notary Public.

APPEARANCES:

    CRAIG McLAUGHLIN, ESQUIRE
    O'CONNOR CHRISTENSEN & McLAUGHLIN, LLP
      1920 Main Street - Suite 150
      Irvine, California 92614
      for the Plaintiff

    JACK B. BLUMENFELD, ESQUIRE
    LESLIE A. POLIZOTI, ESQUIRE
    MORRIS NICHOLS ARSHT & TUNNELL
      1201 North Market Street - 18th Floor
      Wilmington, Delaware 19801
      for the Defendant

ALSO PRESENT:

    PAUL J. LERNER
    GENERAL PATENT CORPORATION

WILCOX & FETZER
1330 King Street - Wilmington, Delaware 19801
(302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters



Greggory W. Hughes                                                   13

1    A.   As a core group with Scieran, we got together
2  and decided I would represent for these questions today,
3  these subjects today.
4    Q.   Who was the "we" who got together?
5    A.   The principals, myself, Rod Ross, and
6  Chris Boore.
7    Q.   Do you regard yourself still as being a
8  principal of Scieran?
9    A.   Yes.
10   Q.   Are you an officer of Scieran?
11   A.   I don't know how you define "officer."
12   Q.   What do you mean when you say you're a principal
13  of Scieran?
14   A.   Shareholder.
15   Q.   Do you have any role in decision-making by
16  Scieran?
17   A.   Scieran doesn't exist today except as a company.
18  We're not currently selling a product or designing
19  anything.
20   Q.   Is Scieran doing any business?
21   A.   Not that I'm aware of.
22   Q.   When did Scieran stop doing business?
23   A.   I don't know.  You have to ask Rob Ross to
24  answer that.



WILCOX & FETZER LTD.
Registered Professional Reporters

Greggory W. Hughes                                               14

1    Q.   Are you getting paid for the time you're
2  spending at this deposition?
3    A.   It's kind of a contingency thing.
4    Q.   I'm sorry. What is the contingency thing?
5    A.   Winning the case.
6    Q.   I'm sorry?
7    A.   I'll get paid if we win the case. If not, I
8  won't get anything.
9    Q.   Who did you make that arrangement with?
10   A.   Rod Ross.
11   Q.   Is your contingency arrangement in writing?
12   A.   No.
13   Q.   Can you explain to me what the arrangement is?
14   A.   I'll get a consultant fee for being here.
15   Q.   How much will the consulting fee be?
16   A.   I don't know the answer to that.
17   Q.   Explain to me what the terms of the contingency
18 arrangement are.
19   A.   I'll get paid for my time for being here.
20   Q.   Does the amount you get paid turn on how much
21 Scieran wins if it wins the case?
22   A.   Well, Scieran doesn't have any money right now,
23 so it's not a given.
24   Q.   But does the amount that you will be paid

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on September 15, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>  Jack B. Blumenfeld Esquire
>  Morris Nichols Arsht & Tunnell
>  1201 North Market Street
>  Wilmington, DE 19801

I further certify that on September 15, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jingersoll@ycst.com

Attorneys for Scieran Technologies, Inc.

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on September 28, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> Wilmington, DE 19801

I further certify that on September 28, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jingersoll@ycst.com

Attorneys for Scieran Technologies, Inc.

DB01:1593603.1